**PIHER, S. A., Plaintiff-Appellant,**

v.

**CTS CORPORATION,
Defendant-Appellee.**

**No. 81–1672.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 18, 1981.

Decided Nov. 4, 1981.

Rehearing Denied Dec. 2, 1981.

Raiford A. Blackstone, Jr., Trexler, Bushnell & Wolters, Chicago, Ill., for plaintiff-appellant.

Walther E. Wyss, Mason, Kolehaimen, Rathburn & Wyss, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, SWYGERT, Senior Circuit Judge, and BAUER, Circuit Judge.

BAUER, Circuit Judge.

This appeal arises from a dispute over a patent for a variable resistor which is the mechanical structure of an electrical component frequently used in connection with volume controls in radios and televisions. The Patent Office and the district court awarded the patent to CTS, the junior party. We affirm.

Piher filed its patent application on July 30, 1968, twenty months before CTS filed its application for the same invention. Since two applications had been filed for the same device, the Patent Office declared an interference and referred the matter to a three-member Board of Patent Interferences (Board) for resolution. By virtue of its earlier filing Piher was designated the senior party. Despite Piher's senior status, the Board, on the basis of documentary evidence, deposition testimony, and oral argument, concluded that CTS had been the first to reduce the invention to practice. Therefore, CTS was awarded priority of invention.

In arriving at its decision, the Board relied on an earlier case also involving Piher and CTS and the same variable resistor. *CTS Corp. v. Piher International Corp.*, 184 U.S.P.Q. 399 (N.D.Ill.1974), *modified*, 527 F.2d 95 (7th Cir. 1975), *cert. denied*, 424 U.S. 978, 96 S.Ct. 1485, 47 L.Ed.2d 748 (1976). In that case the issue of actual reduction to practice had been decided in favor of CTS. For this reason the Board believed that it was precluded by the doctrine of collateral estoppel from reconsideration of the issue.

On appeal, the district court held that the Board erred in applying the doctrine of collateral estoppel because the issue of actual reduction to practice had not been fully litigated in the earlier case. *CTS Corp. v. Piher International Corp.*, 184 U.S.P.Q. 399 (N.D.Ill.1974), *modified*, 527 F.2d 95 (7th Cir. 1975), *cert. denied*, 424 U.S. 978, 96 S.Ct. 1485, 47 L.Ed.2d 748 (1976). On remand the Board again awarded priority to CTS and Piher again appealed the decision. In an extensive opinion carefully analyzing all the evidence, the district court affirmed the Board's decision. Piher then brought this appeal.

Piher assigns both factual and legal errors. It challenges the Board's findings that CTS successfully reduced its invention to practice before Piher filed its patent application. Piher also argues that even if CTS were entitled to priority by virtue of the fact that it was first to reduce its invention to practice, it forfeited its priority by its unjustifiable delay in filing the patent application.

With respect to the issue of priority of invention, Piher asserts that the district court failed to hold CTS to the "strictest of proofs," as required by *Rex Chainbelt v. Borg-Warner*, 477 F.2d 481 (7th Cir. 1973), and that it did not correctly apply the standards enunciated in *Gordon v. Hubbard*, 347 F.2d 1001, 52 CCPA 1598 (1965), for determining what constitutes successfully reducing an invention to practice. Further, Piher argues that it was prejudiced by the district court's denial of its statutory right under 35 U.S.C. § 146 to present additional evidence on what it alleges were new matters raised by the Board's second decision.

The district court refused to hear additional evidence. Piher had attempted to call three witnesses: CTS's former patent counsel Gaydos, an independent patent attorney and an expert on variable resistors. Piher wished to question Gaydos about his delay in filing the patent application and to attempt to impeach Gaydos' credibility with two district court opinions which had been issued after the Board had awarded priority to CTS. In those two cases, each involving CTS and the issue of delay in filing other patent applications, the courts found that Gaydos was guilty of "culpable nondisclosure" and "lack of candor," *CTS v. EMCA*, 469 F.Supp. 801, 823 (S.D.N.Y.1979); *Bourns v. CTS*, 207 U.S.P.Q. 533, 537 (N.D.Ind. 1979). Piher argues that the district court's refusal to permit Gaydos to be called was particularly prejudicial because his testimony before the Board explaining the delay in filing the patent application was totally uncorroborated. Piher also wanted to call an experienced patent attorney not involved with this case to rebut Gaydos' testimony before the Board that CTS's patent application required 400 to 500 hours of preparation. This attorney would have testified that only 25 to 30 hours were required on a patent application like the one involved here. Finally, Piher sought to introduce expert testimony to establish that CTS's invention had basic design defects and,

thus, had never successfully been reduced to practice.

Initially we note that while an action brought under 35 U.S.C. § 146 to reconsider a decision of the Board of Patent Interferences is a trial *de novo* in which evidence not presented before the Patent Office may be introduced, 35 U.S.C. § 146, the right to present new evidence is not unlimited. *Velsicol Chemical Corp. v. Monsanto Co.*, 579 F.2d 1038, 1044 (7th Cir. 1978). In *Velsicol Chemical* this court concluded that new evidence should be permitted in a § 146 proceeding in situations where the additional evidence was unavailable during the interference proceeding or necessitated by special circumstances. An intervening change in the law, the presence of a new issue, or the admission of other new evidence deserving of a response or further elaboration were deemed special circumstances justifying the admission of additional evidence. *Id.* at 1046.

Piher raises several arguments in support of its contention that the district court should have permitted the new evidence. First, it notes that the two district court opinions dealing with Gaydos' credibility were unavailable during the interference proceeding and emphasizes that Gaydos' credibility is particularly relevant because his testimony is the only evidence in the record as to why there was a delay in filing CTS's application and why the application took so long to prepare. Second, Piher states that it was "astounded" at what it characterizes as the Board's "totally unexpected acceptance" of Gaydos' "incredible testimony." Appellant's Br. at 28. It emphasizes that the Board's ruling that, notwithstanding evidence of electrical shorting, CTS had successfully reduced its invention to practice was "[a]nother surprising aspect of the Board's decision." *Id.* Lastly, Piher states that it first learned that CTS had not made or sold its variable resistor until after Piher had marketed its product during the discovery period preceding the second appeal. Piher believes this evidence is substantial new evidence that CTS never successfully reduced its invention to practice. Relying on *Velsicol Chemical*, Piher

characterizes the "unexpected findings" by the Board and the late discovery of CTS's production and marketing practices as special circumstances giving Piher the right to introduce new evidence.

As proponent of the evidence Piher bears the burden of proving that it has not waived the right to present this evidence. *Velsicol Chemical Corp. v. Monsanto Co.*, 579 F.2d 1038, 1046 (7th Cir. 1978). It has failed to meet that burden. Indeed, in a hearing held before the district court on this issue, Piher repeatedly conceded that the additional evidence was not essential. Referring to the order issued prior to the hearing in which the court stated that it did not contemplate hearing new evidence, the trial judge cautioned, "If you think my order is reversible error, you tell me that here and now. You tell me what you want. And if you're entitled to it, you will get it. It's that simple." Piher's counsel responded, "It's the plaintiff's position that additional testimony isn't absolutely necessary." Tr. of Oral Argument in United States District Court for the Northern District of Indiana at 6. As the hearing progressed Piher's counsel reiterated, "As I started to say, we don't think the new evidence is absolutely essential. We just think it would be nice to give a complete picture to the court." *Id.* at 8. Still later, counsel repeated, "As I said, it's not essential to our case, but it was something that we thought would help the court." *Id.* at 9. In view of Piher's unequivocal position, it cannot now claim reversible error because the trial judge, in his discretion, refused to hear what Piher itself admitted was non-essential evidence. *Accord, Kirschke v. Lamar*, 426 F.2d 870 (8th Cir. 1970).

Moreover, Piher's assertion that the Board's unexpected findings fall within the scope of *Velsicol Chemical's* special circumstances fails. The issues of how many hours should have been devoted to CTS's application or whether the evidence supported a finding of actual reduction to practice were fully litigated in the interference proceeding. Piher was well aware of CTS's

position on these issues and had full opportunity at that time to introduce experts to refute Piher's arguments. Having failed to take advantage of the opportunity to present evidence, it cannot now assert that right merely because it was surprised that the Board credited Gaydos' testimony and ruled in favor of CTS. An adverse decision after full opportunity to present evidence is not a special circumstance within the scope of *Velsicol Chemical* giving the party an absolute right to present additional evidence.

We next consider whether the evidence supports the Board's finding that CTS did, in fact, successfully reduce its invention to practice. The parties agree that the burden of proof on the issue of reduction to practice in a proceeding before the Board is the preponderance of the evidence. They differ, however, with respect to how they characterized the standard of review in this court. CTS claims the Board's decision must be affirmed unless it is clearly erroneous, while Piher contends that the Board's award of priority to CTS may be affirmed only if the decision is supported by clear and convincing proof. Further, Piher argues that where, as here, the evidence on an issue is primarily oral testimony by a biased party, that party must be held to the "strictest of proofs." Piher contends that the oral testimony of English, the inventor who assigned the rights to his invention to CTS, is inherently unreliable because English was an interested party testifying about events which had occurred several years before the hearing. Piher concludes that English's testimony must be subjected to the closest scrutiny.

█ Piher's contention that the district court did not apply the proper standard of review is not persuasive for it is well settled that the decision of the Patent Office must be affirmed unless the evidence in character and amount carries a thorough conviction that a contrary result should obtain. *Rex Chainbelt Inc. v. Borg-Warner Corp.*, 477 F.2d 481, 484, (7th Cir. 1973). Moreover, Piher's reliance on the terms "convincing proof" "clear proof" and "strictest of

proofs" in *Rex Chainbelt* to establish a broad standard of review does not withstand analysis, for Piher quotes these terms out of context. In *Rex Chainbelt* the court held that the district court had incorrectly applied the preponderance of the evidence standard rather than the thorough conviction standard set forth in *Morgan v. Daniels*, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657 (1894), to set aside the Board's award of priority. The court noted that "[i]n conducting our review of the district court's action in these interference proceedings, we have attached paramount significance to the roles to be played by the Board and the district court in the fact-finding process," 477 F.2d at 486, and emphasized that the less new evidence before the district court, "the more blatant the Board's factual errors must have been before the district court is justified in reversing the Board's award." *Id.* at 487. In contrast to the situation in *Rex Chainbelt* where the district court gave scant deference to the Board's findings, Piher argues that the district court erred by giving too much credence to the Board's findings.

We cannot agree. It is true, as Piher contends, that in *Rex Chainbelt* the Board determined that the oral testimony of the interested party in that case, when evaluated in conjunction with the entire record, was "inherently unworthy of credit." 447 F.2d at 491. There the court merely held that it could not find fault with the Board's finding that the witness was not credible. Nothing, however, in that decision suggests that the Board may never credit oral testimony of an interested party about events which had occurred years before.

Moreover, English's testimony is not the only evidence in the record on the issue of actual reduction to practice. The district court meticulously analyzed the evidence before the Board and found that English's testimony was corroborated by several witnesses and numerous physical and documentary exhibits, including a model embodying almost all the elements in CTS's application, detailed parts drawings, successful testing of the initial model, and an order for tooling to produce preproduction prototypes.

Piher appears to equate reduction to practice with readiness for commercial production for it claims that the test results of CTS's invention indicating noise distortion and shorting problems preclude a finding of reduction to practice. It is clear, however, that reduction to practice is not synonymous with mechanical perfection; all that is required is a demonstration of practical efficacy and utility. *DeLong Corp. v. Raymond Intern., Inc.*, 622 F.2d 1135, 1143 (3d Cir. 1980). It is also clear that further experiments in an attempt to refine the device is no evidence that it has not been reduced to practice. *Del Mar Engineering Laboratories v. Physio-Tronics, Inc.*, 642 F.2d 1167, 1169 (9th Cir. 1981). But, as the district court pointed out, a device is reduced to practice once it has been "assembled, adjusted and used." *Piher Sociedad Anonima v. CTS Corp.*, No. 80–126, slip op. at 2 (N.D.Ind. Mar. 9, 1981). There is ample evidence in the record to support the Board's finding that CTS's variable resistor was "assembled, adjusted and used." Piher's reliance on *Gordon v. Hubbard*, 347 F.2d 1001, 52 CCPA 1598 (1965), to challenge this finding is misplaced. The district court carefully compared *Gordon* with the facts here and found *Gordon* to be inapposite. Since we agree with the extensive analysis set forth in the district court's decision, it is unnecessary to repeat that analysis here. We agree that *Gordon* does not control.

Thus, applying as we must the clearly erroneous standard, *Scheller-Globe Corp. v. Milsco Manufacturing Co.*, 636 F.2d 177, 178 (7th Cir. 1980), and giving the Board's decision the great deference to which it is entitled, *Velsicol Chemical Corp. v. Monsanto Co.*, 579 F.2d 1038, 1445 (7th Cir. 1978), we are not thoroughly convinced that the Board erred in finding that CTS had successfully reduced its invention to practice.

Similarly, Piher's charge that CTS is guilty of suppression and concealment lacks merit. Piher charges that CTS overtly suppressed its invention when, after a series of unsuccessful tests in December 1968 and January 1969, it abandoned the invention for more than four years. Piher claims that because of this overt suppression or concealment, it is unnecessary to consider whether CTS's delay in filing created an inference of suppression or concealment or whether CTS has successfully rebutted that inference.

The evidence does not support Piher's charge of overt suppression. As the Board emphasized, "To amount to a loss of right to a patent in favor of a latter inventor, suppression or concealment must be deliberate or intentional." *English v. Heredero*, Patent Interference No. 98, 455 (Board of Patent Interferences, Sept. 19, 1977) at 7. Piher grounds its charge of overt suppression on the testimony of Rozema, a CTS employee who was an executive in charge of new commercial products during the year CTS's invention was reduced to practice. Rozema testified that he did not work on the resistor following the testing in January 1969 and that he didn't attempt to solve the defects exposed by testing the model resistor because the project was put aside and he devoted his energies to another project. Rozema also stated that as of 1976, when he testified, the variable resistor project had not yet been reactivated. He added, however, that he believed the resistor "was becoming more required today [in 1976] than it was in 1969." Dep. of Rozema at 979.

Rozema's testimony that work on the resistor temporarily ceased while other projects were developed is insufficient to prove that CTS overtly suppressed its invention. The testimony of numerous CTS employees, including executives assigned to oversee the development of new commercial products and members of the Patent Committee, clearly establishes that the filing of an application was discussed as early as November 1967, begun in late summer of 1969, and completed and filed in March 1970. This evidence belies any intention to abandon the rights to the invention. Hence, there was no overt suppression.

Finally, Piher's charge that suppression or concealment can be inferred from CTS's delay in filing does not withstand analysis. To prevail on a charge of

suppression Piher must prove its allegation by a preponderance of the evidence. *Steinberg v. Seitz*, 517 F.2d 1359 (Cust. & Pat. App.1975). Piher devotes a considerable portion of its brief to the actual number of months of the delay, insisting the delay was 28 months. CTS maintains the delay was only 22 months. Relying on a 1980 Board decision, *Klug v. Wood*, Patent Interference No. 99,716 (Board of Patent Interferences, Apr. 29, 1981), Piher contends, that as a matter of law, a delay of 26 months or more raises an inference of suppression or concealment which CTS has failed to rebut.

In *Klug*, the Board noted that *Shindelar v. Holdeman*, 628 F.2d 1337 (Cust. & Pat. App.1980), cautioned against any attempt to establish a rule that a particular length of time constituted per se unreasonable delay. Despite *Shindelar*'s warning, the Board stated that Klug's delay of 26 months constituted, prima facie, an unreasonable delay. Piher reads this finding to establish a per se rule in all contexts. We do not read *Klug* so broadly. Moreover, to the extent that *Klug* held that the twenty-six months is per se unreasonable delay, we decline to follow *Klug*.

Therefore, we must examine the record to determine whether, under the facts in this case, CTS's delay is reasonable. The Board found that CTS's actual delay was 22 months and that this delay was justified because the period from May 1968 to January 1969 was devoted to perfecting the invention and during the period from September 1969 to March 1970 the patent application was being prepared. The finding that CTS devoted the period from May 1968, the date of actual reduction to practice, through January 1969 to perfecting the invention is supported by the fact that samples of the variable resistor were sent to the laboratory for extensive testing and that these tests were not completed until January 1969. The Board's finding that, even if an intent to suppress and conceal could be inferred, the delay was justified by activities directed to perfecting the invention and preparing the patent application cannot be said to be clearly erroneous. Accordingly,

the Board's finding that there was no suppression or concealment is also affirmed.

For the reasons stated in this opinion, the judgment of the district court is

Affirmed.