**CTS CORPORATION, Appellee,**

v.

**PIHER INTERNATIONAL CORPORATION and Piher Sociedad Anonima, Appellants.**

**Appeal Nos. 83–1119, 83–1120, 83–1146 and 83–1147.**

United States Court of Appeals, Federal Circuit.

Feb. 17, 1984.

R.A. Blackstone, Jr., Chicago, Ill., argued for appellants. With him on the brief was Richard R. Trexler, Chicago, Ill.

Walther E. Wyss, Chicago, Ill., argued for appellee. With him on the brief were Robert L. Rohrback, Joseph Krieger and Larry J. Palguta, Chicago, Ill.

Before KASHIWA and SMITH, Circuit Judges, and WISDOM,* Senior Circuit Judge.

* The Honorable John Minor Wisdom, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

KASHIWA, Circuit Judge.

This is a consolidated appeal from a judgment order of the United States District Court for the Northern District of Illinois (Nos. 72 C 1891 and 76 C 1152), entered May 25, 1983. In its oral findings of fact and conclusions of law, the district court denied, *inter alia,* Piher International Corporation and Piher Sociedad Anomina's ("Piher") Rule 60(b)(6) [1] motion to modify the district court's judgment order entered January 25, 1982. *CTS Corp. v. Piher International Corp.,* 219 USPQ 1180. The Rule 60(b)(6) motion was sought in order to render unenforceable the agreements and the CTS pat-

ents which were cited in the January 25, 1982 judgment order because of appellee's, CTS Corporation ("CTS"), failure to file certain documents with the United States Patent and Trademark Office (the "PTO") pursuant to 35 U.S.C. § 135(c). [2] In addition, the district court denied appellee's motion for attorneys' fees. We affirm.

## Background

This case is the latest in a series of decisions dating back to 1975; the instant action is an appeal of the denial of a post-judgment motion relating to a patent infringement lawsuit. [3] During the relevant

---

1. Rule 60(b)(6), F.R.Civ.P. 60(b)(6), states:

   Rule 60. *Relief from Judgment or Order*
   *(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.*
   On *motion and upon such terms as are just,* the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

   \* \* \* \* \* \*

   (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time \* \* \*. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

2. 35 U.S.C. § 135(c) states:

   § 135. *Interferences*
   (c) Any agreement or understanding between parties to an interference, including any collateral agreements referred to therein, made in connection with or in contemplation of the termination of the interference, shall be in writing and a true copy thereof filed in the Patent and Trademark Office before the termination of the interference as between the said parties to the agreement or understanding. If any party filing the same so requests, the copy shall be kept separate from the file of the interference, and made available only to Government agencies on written request, or to any person on a showing of good cause. Failure to file the copy of such agreement or understanding shall ren-

der permanently unenforceable such agreement or understanding and any patent of such parties involved in the interference or any patent subsequently issued on any application of such parties so involved. The Commissioner may, however, on a showing of good cause for failure to file within the time prescribed, permit the filing of the agreement or understanding during the six-month period subsequent to the termination of the interference as between the parties to the agreement or understanding.

   The Commissioner shall give notice to the parties or their attorneys of record, a reasonable time prior to said termination, of the filing requirement of this section. If the Commissioner gives such notice at a later time, irrespective of the right to file such agreement or understanding within the six-month period on a showing of good cause, the parties may file such agreement or understanding within sixty days of the receipt of such notice.

   Any discretionary action of the Commissioner under this subsection shall be reviewable under section 10 of the Administrative Procedure Act.

3. The infringement lawsuit comprised two civil actions the first of which, Civil Action No. 72 C 1891, involved Piher's *infringement of four CTS patents.* The four CTS patents are U.S. Patent Nos. 2,740,027; 3,375,478; 3,518,604; and 3,670,285 (the " '285" or "English" patent). In *CTS Corp. v. Piher Int'l Corp.,* 184 USPQ 399 (1975), the U.S. District Court for the Northern District of Illinois (the "Illinois court") found all four CTS patents, *except for the '285 patent,* valid and infringed. The Seventh Circuit Court of Appeals, in *CTS Corp. v. Piher Int'l Corp.,* 527 F.2d 95, 188 USPQ 419 (1975), *cert. denied,* 424 U.S. 978, 96 S.Ct. 1485, 47 L.Ed.2d 748 (1976), affirmed the district court's decision except for the "on sale" defense as to the '285 patent. During remand, the "on sale" issue was retried and, in an unpublished decision dated March 17, 1978, the "on sale" issue was

period of this appeal, late 1981 and early 1982, the infringement action was in its accounting phase in the U.S. District Court for the Northern District of Illinois (the "Illinois court"). Concurrently, a related interference civil action [4] was proceeding through the U.S. District Court for the Northern District of Indiana (the "Indiana court") and the Seventh Circuit Court of Appeals.[5] The Indiana court's decision granting priority of invention to CTS was affirmed by the Seventh Circuit on November 4, 1981. *Piher S.A. v. CTS Corp.,* 664 F.2d 122, 212 USPQ 914.

On November 5, 1981, CTS contacted Piher concerning possible settlement. The Seventh Circuit issued its mandate for the interference case on November 6. On November 18, Piher filed a petition for rehearing at the Seventh Circuit regarding the interference case, and the Seventh Circuit withdrew its mandate shortly thereafter. On November 21, the PTO terminated its interference proceeding after receipt of the Seventh Circuit's affirmance of November 4 and the mandate of November 6. The PTO was not aware and the parties did not inform it that the November 6 mandate had subsequently been withdrawn.

In the afternoon of November 23, management representatives of CTS and Piher met to discuss and settle the accounting phase of the infringement case. It was a meeting between businessmen to negotiate a settlement. Legal matters were not discussed at this meeting. At the close of the meeting, CTS proposed a number of basic terms which could be used to form the basis of an agreement and gave Piher 24 hours to accept or reject them.

The next day, November 24, Piher accepted the basic terms presented by CTS. On November 25, CTS forwarded to Piher a draft of the proposed agreement. After exchanging several drafts, a copy of the agreement, entitled "Agreement in Principle" ("Document A"), was signed by CTS on December 10 and by Piher on December 16.

---

found in favor of Piher. This judgment, however, was reversed by the Seventh Circuit. *CTS Corp. v. Piher Int'l Corp.,* 593 F.2d 777, 201 USPQ 649, *cert. denied,* 444 U.S. 884, 100 S.Ct. 175, 62 L.Ed.2d 113 (1979).

The second infringement action, Civil Action No. 76 C 1152, related to Piher's alleged infringement of the '285 patent claims. Pursuant to a stipulation, this case was stayed pending the outcome of both the earlier infringement case and the interference, *infra,* note 5. The stipulation further provided that if CTS prevailed in both the first infringement action and the interference, a judgment of validity and infringement on the '285 patent would be entered. After the writ of certiorari for the first infringement case was denied in 1979, the Illinois court ordered that the accounting on all four CTS patents should proceed. Pursuant to the stipulation, a judgment order in favor of CTS was entered in the second infringement action on November 10, 1981.

**4.** The statute relating to interference civil action, 35 U.S.C. § 146 (1976), states in pertinent part:

§ 146. *Civil action in case of interference*
Any party to an interference dissatisfied with the decision of the board of patent interferences on the question of priority, may have remedy by civil action, if commenced within such time after such decision, not less than sixty days, as the Commissioner appoints or as provided in section 141 of this title, unless he has appealed to the United States Court of Customs and Patent Appeals, and such appeal is pending or has been decided. In such suits the record in the Patent and Trademark Office shall be admitted on motion of either party upon the terms and conditions as to costs, expenses, and the further cross-examination of the witnesses as the court imposes, without prejudice to the right of the parties to take further testimony. The testimony and exhibits of the record in the Patent and Trademark Office when admitted shall have the same effect as if originally taken and produced in the suit.

**5.** In 1973 Piher filed an application for reissue of its Heredero patent, U.S. Patent No. 3,662,314, in which it copied claims from CTS' '285 patent. The PTO, in *English v. Heredero,* 200 USPQ 597 (Bd.Pat.Intfr.1978), awarded priority of all the counts to English, the CTS inventor. That decision, except for the suppression and concealment issue, was based on collateral estoppel because of findings relating to reduction to practice by CTS that had been made in the first infringement action. *Supra,* note 3. The Indiana court, however, in an unpublished opinion dated September 27, 1979, reversed the PTO. It rejected the collateral estoppel holding and remanded to the PTO for another determination. The PTO, in an unpublished decision dated April 18, 1980, again awarded priority to English. And, the Indiana court affirmed this decision. *Piher S.A. v. CTS Corp.,* 210 USPQ 806 (1981).

On December 2, the petition for rehearing of the interference was denied by the Seventh Circuit. The Seventh Circuit issued its mandate on December 10. Piher did not move to stay the issuance of the mandate for possible petition to the Supreme Court.

"Settlement Agreement" ("Document B") and "License Agreement" ("Document C"), the two remaining settlement documents, were executed by the parties on January 14, 1982. Both Documents A and B made references to the interference. For example, Document A, in relevant part, states:

I. FULL SETTLEMENT

CTS and PIHER shall join in an understanding for a release of PIHER and CTS of any claim or claims arising under the subject matter of paragraph III which either party has or could have asserted against the other, before a United States District Court, including but not limited to The United States Patent and Trademark Office, The United States District Court for the Northern District of Indiana, and The United States District Court for the Northern District of Illinois, Eastern Division, or any State Court of the United States or any Federal or Provincial Court of Canada.

Similarly, Document B, in relevant part, states:

WHEREAS, PIHER and CTS have been adverse parties in each of the following proceedings:

A. *CTS Corporation v. Piher International Corporation and Piher Sociedad Anonima,* Civil Action No. 72 C 1891, pending in the United States District Court for the Northern District of Illinois, Eastern Division, and Appeal Nos. 75–1100, 75–1104, 78–1535, 81–1635 and 81–1829 in the United States Court of Appeals for the Seventh Circuit taken therefrom;

B. *CTS Corporation v. Piher International Corporation and Piher Sociedad Anonima,* Civil Action No. 76 C 1152, pending in the United States District Court for the Northern District of Illinois, Eastern Division;

C. *Piher Sociedad Anonima (assignee of Juan Luis Heredero) v. CTS Corporation (assignee of Jack A. English),* Civil Action Nos. S78–0174 and S80–1026, pending in the United States District Court for the Northern District of Indiana, South Bend Division, and Appeal Nos. 79–2350 and 81–1672 in the United States Court of Appeals for the Seventh Circuit; and

D. *English v. Heredero,* Interference proceeding No. 98–455 in the United States Patent and Trademark Office.

\* \* \* \* \* \*

NOW, THEREFORE, in consideration of the mutual promises set forth herein, the parties agree as follows:

\* \* \* \* \* \*

2. *Termination of Disputes.*

The parties hereto agree to terminate each of the above-identified civil actions and administrative proceedings between the parties by executing and causing to be filed the following documents:

In the United States District Court for the Northern District of Illinois, Eastern Division, in lieu of accounting procedures, there shall be a consent judgment entered by motion \* \* \* and stipulation \* \* \*, such judgment providing for termination and final settlement of all such civil actions and the consent judgment and final order \* \* \* of the Court shall incorporate this Settlement Agreement, the Agreement in Principle, \* \* \* and the patent License Agreement \* \* \*, by which Piher shall hereafter be entitled to use, sell, distribute, and import into the United States and Canada products within the terms of the subject matter of Paragraph 6 hereafter.

On January 25, 1982, a stipulated consent judgment in lieu of accounting was entered by the Illinois court. Documents A, B and C were filed in that court under seal. On February 5, 1982, a copy of the January 25 consent judgment was filed in the PTO, but the three documents were not filed. In January, 1983, Piher filed the Rule 60(b)(6) motion in the Illinois court to modify the January 25, 1982 consent judgment because

of CTS' failure to file Documents A, B and C with the PTO.

### District Court Proceeding

The district court, in its oral findings of fact and conclusions of law, held that Piher failed to meet its burden of proving by the greater weight of the evidence that the parties had entered into an understanding or agreement which was required to be filed and was not filed with the PTO prior to the termination of the interference. Thus, the district court denied Piher's Rule 60(b)(6) motion to modify the final judgment order of January 25, 1982.

In its pre-trial memorandum opinion dated April 15, 1983, the district court interpreted section 135(c) to require, *inter alia,* that there must be a causal relationship between agreements or understandings and the termination of the interference. *CTS Corp. v. Piher International Corp.,* 219 USPQ 1177.

In determining the facts of this case, the district court, after hearing conflicting testimony, found that the evidence did not demonstrate a causal relationship between the settlement and the termination of the interference. It found that the possibility of filing a petition for certiorari to the Supreme Court was not discussed by the participants at the November 23, 1981 conference. Next, the district court found that there was no bilateral understanding between the parties that the termination of the interference was part of the consideration for the settlement. Since the negotiations between the parties were not causally related to the termination of the interference, the district court found that the agreements need not be filed.

In addition, the district court denied CTS' motion for attorneys' fees since Piher's motion was not frivolous.

### OPINION

The standard of review of a district court's denial of a Rule 60(b) motion is abuse of discretion. *See Darlington v. Studebaker-Packard Corp.,* 261 F.2d 903, 905 (7th Cir.), *cert. denied,* 359 U.S. 992, 79 S.Ct. 1121, 3 L.Ed.2d 980 (1959); *see gener-*

*ally Bell Telephone Laboratories, Inc. v. Hughes Aircraft Co.,* 73 F.R.D. 16 (D.Del. 1976). Unless exceptional or extraordinary circumstances are shown, a Rule 60(b)(6) motion is generally not granted. *Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950). The underlying factfindings by the district court in support of the denial must be upheld unless they are clearly erroneous. Fed.R.Civ.P. 52(a); *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

Our jurisdiction is based on 28 U.S.C. 1295(a) (1982). *See Cinerama, Inc. v. Sweet Music, S.A.,* 482 F.2d 66, 71–72 (2d Cir.1973) (a denial of a Rule 60(b)(6) motion is final and appealable).

### I

■ 35 U.S.C. § 135(c) was enacted to promote competition in the patent law area. As a means to prevent anti-competitive settlements between parties involved in patent interferences, any settlement agreements between parties must be filed with the PTO. Such agreements can therefore be reviewed by the Department of Justice's Antitrust Division by means of a "Civil Investigative Demand." *See generally United States v. FMC Corp.,* 717 F.2d 775, 777–78, 219 USPQ 761, 763–64 (3rd Cir. 1983). The underlying motivation for the statute was clearly stated in the House Report. It stated:

> Recent experience has indicated that parties have sometimes used these interference proceedings in derogation of the public interest, in that interference settlement agreements have been entered into for the purpose of restricting competition. By requiring the filing of settlement agreements, the bill would make it more difficult for patent applicants and owners to use an interference settlement agreement as a means of secretly violating the antitrust law.

H.R.Rep. No. 1983, 87th Cong., 2d Sess. 1 (1962), U.S.Code Cong. & Admin.News 1962, 3286.

■ Section 135(c) requires that any agreement or understanding made in con-

nection with or in contemplation of the termination of an interference must be filed with the PTO. *See Moog, Inc. v. Pegasus Laboratories, Inc.,* 376 F.Supp. 439, 444, 180 USPQ 4, 8 (E.D.Mich.1973), *aff'd,* 521 F.2d 501, 187 USPQ 279 (6th Cir.1975), *cert. denied,* 424 U.S. 968, 96 S.Ct. 1464, 47 L.Ed.2d 735 (1976) ("[A]ll agreements, whether initial or supplemental, with actual or potential anti-trust implications, must be filed in accordance with Section 135(c) or suffer the penalty of unenforceability."). Failure to file with the PTO renders such agreement or understanding and any patent involved in, or subsequently issued on an application involved in, the interference unenforceable.

### A

The appellants argue that the district court misinterpreted section 135(c) and that the settlement agreements are clearly within the scope of the statute.[6] Piher contends that the agreements were made in connection with or in contemplation of the termination and, as such, were the direct cause of the termination. Whereas the district court found there was no causal relationship between the agreements and the termination, the appellants contend otherwise. We disagree with the appellants.

■ We agree with the district court that, pursuant to section 135(c), there must be a causal relationship between the agreements and the termination of the interference. *See United States v. FMC Corp.,* 215 USPQ 43, 51–53 (E.D.Pa.1982), *rev'd on other grounds,* 717 F.2d 775, 219 USPQ 761 (3rd Cir.1983); *cf. Moog,* 521 F.2d at 506 ("The District Court was right in finding a causal relationship between the withholding [of an agreement] and the termination of the interference.").

■ First, the appellants disagree with the district court's finding that the possibility of filing a petition for writ of certiorari in the interference case was not discussed during the November 23, 1981, settlement meeting between the parties. Based on

these alleged discussions of the certiorari petition, Piher argues that at least Document A was made in contemplation of the termination. We, however, disagree.

Evidence presented at trial points to the district court's conclusion that the question of filing a certiorari petition was not discussed at the afternoon meeting of November 23. The district court heard conflicting testimony on this point and found that legal questions such as the certiorari petition were probably not discussed since the afternoon conference was a meeting between businessmen. In light of the circumstances and the evidence presented, the district court found that Piher failed to meet its burden of proving that the certiorari petition was discussed at the afternoon meeting. The district court stated:

It is not implausible that the subject [of certiorari] would have been mentioned. Piher had indeed filed certiorari petitions on two prior occasions, and it's not inconceivable that the lay representatives of the company might have had such a possibility in mind on November 23.

What is missing is any testimony whatsoever, or evidence of any kind whatsoever, that anybody on the Piher side of the case thought that Piher had any chance whatsoever to succeed on a petition for certiorari.

It is not enough that the laymen simply testified that they discussed the question of certiorari. There has to be more, in my view. There has to be some indication that they actually thought this was a remedy which held out some hope of relief.

There is no such testimony.

219 USPQ at 1181.

We hold that the district court committed no clear error in finding that the possibility of filing a writ petition was not discussed at the November 23 meeting, and thus, no causal relationship was shown.

---

**6.** We note with interest that appellee contends that an "interference," as stated in section 135, refers only to the proceedings in the PTO and not to the proceedings in the district courts under section 146. Thus, the "interference" in

the instant case terminated in 1980 when the PTO granted priority to CTS. We, however, do not and need not reach this issue. Moreover, the record for this issue was not fully developed below.

## B

The appellants next dispute the district court's finding that forbearing from a petition for certiorari was not mutually regarded by the parties as part of the consideration for the settlement. In this regard, the appellants argue that references to the interference in the documents, especially Documents A and B, indicate a connection between the settlement of the infringement lawsuit and the termination of the interference. We again disagree.

The district court found that there was no evidence indicating such a connection since there was no bilateral understanding between the parties that the termination of the interference was part of the consideration for the settlement. In its analysis, the district court first examined the direct evidence, *i.e.,* the documents in evidence, and found that they did not demonstrate a causal relationship between the settlement of the infringement and the termination of the interference. The district court stated:

It is commonplace for parties entering into written settlement agreements to include all possible grievances that might or could exist between them, without reference to whether they are still technically extant. It is very common in the boilerplate releases that are commonly used by lawyers to recite that the parties are mutually giving up all causes of action they might have, known and unknown, and which exist now or at any time since the beginning of the world.

Now, those very words, "since the beginning of the world," are very common recitals in mutual releases.

Obviously, parties are not concerned at the time they enter such agreements with anything that has happened since the beginning of the world. That I suppose, and to make it absolutely clear that the parties mean to have no further controversy after the execution of the agreement.

But that doesn't mean that it is the agreement that is terminating all of those controversies that could have existed since the beginning of the world.

And, by the same token, the fact that this settlement agreement in this case refers to the interference doesn't mean that it is that document that is terminating the interference as a matter of fact. 219 USPQ at 1182.

In addition, the district court found that the circumstantial evidence did not support Piher. First, the possibility of certiorari was unlikely since the Supreme Court grants only around 180 out of 4,000–5,000 certiorari petitions a year and rarely accepts a patent case. Next, if Piher's attorney had believed there was any respectable chance of a successful certiorari petition, he would have stated so to his client. The absence of any letter or testimony to this effect by anyone on the Piher side is strong circumstantial evidence that Piher believed that there was no practical possibility of a successful appeal to the Supreme Court. *See Evans, Inc. v. Tiffany & Co.,* 416 F.Supp. 224, 232 (N.D.Ill.1976). Similarly, there was no evidence that CTS was worried about a certiorari petition and no documentary or testimonial evidence to indicate such concern. CTS and its lawyers acted as though the interference was over.

We hold that the district court committed no clear error in finding that references to the interference in Documents A and B did not indicate a causal relationship between the settlement of the infringement and the termination of the interference.

## C

In accordance with its interpretation that only agreements which have a causal relationship with the termination need be filed with the PTO, the district court stated that Documents A, B and C need not be filed with the PTO since they were not made in connection with or in contemplation of the termination of the interference.[7] The dis-

---

7. Appellants also argue that the district court may have mistakenly interpreted the statute to require that only *anti-competitive* agreements need be filed, which is contrary to *FMC Corp.,*

215 USPQ at 50 note 3. Since resolving this issue will not alter the outcome of this case, we need not and do not reach it.

trict court's findings are not clearly erroneous.

## II

In addition, the appellee argues that the district court abused its discretion in its denial of appellee's motion for attorneys' fees pursuant to 35 U.S.C. § 285. The district court concluded that although Piher's motion was meritless, it nonetheless was neither frivolous nor brought only for harassment or delay. We, therefore, fail to see where the district court abused its discretion. *Lam, Inc. v. Johns-Manville Corp.,* 718 F.2d 1056, 219 USPQ 670 (Fed.Cir.1983).

### Conclusion

Since the district court's findings of fact are not clearly erroneous and it did not abuse its discretion in denying the various motions, we affirm the district court's decision.

AFFIRMED.