**EVERPURE, INC.**

v.

**CUNO, INC.**

**Civ. No. N–88–170 (PCD).**

United States District Court,
D. Connecticut.

July 21, 1988.

---

726

William Narwold, Cummings & Lockwood, Hartford, Conn., Frank Thienpont, Chicago, Ill., for plaintiff.

Stuart Rosen, Schatz & Schatz, Ribicoff & Kotkin, Hartford, Conn., John Cline, Steven Szczepanski, Willian, Brinks, Olds, Hofer, Gilson, Lione, Ltd., Chicago, Ill., for defendant.

## RULING ON MOTION FOR PRELIMINARY INJUNCTION and MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Plaintiff alleges infringement by defendant of its Patent No. 3,746,171 ('171).[1] Pending are the following motions on which a hearing has been held and briefing has been completed: (a) plaintiff's motion for a preliminary injunction; and (b) defendant's motion for summary judgment and attorney fees pursuant to Fed.R.Civ.P. 11 and 35 U.S.C. § 285. A recitation of the undisputed facts is necessary for decision of both motions.

### I.  Facts

Plaintiff has been issued patent '171 for filtration equipment with an expiration of July 17, 1990. The patent describes a fixed head to which a replaceable filter cartridge is attached by a locking mechanism. The device is designed to be used with vending machines, commercial ice machines, and commercial coffee makers, all of which re-

---

1. Plaintiff's patent is presumed to be valid, 35 U.S.C. § 282, and it is the burden of the challenger to establish invalidity clearly and convincingly. *RCA Corp. v. Applied Digital Data Systems, Inc.,* 730 F.2d 1440, 1443–44 (Fed.Cir.), cert. denied, 468 U.S. 1228, 105 S.Ct. 32, 82 L.Ed.2d 923 (1984).

quire highly purified water for product quality. Plaintiff manufacturers and sells both filtration units and replacement cartridge filters.[2] It enjoys a significant market share partially because of the uniqueness of its filter's interconnection to its filtration head.

Plaintiff does not claim patent protection for the filtration function nor the filter cartridge itself, but rather for the filter cartridge and the head which are combined by means of an interlocking mechanism. That mechanism is created by the configuration of the neck of the filter cartridge, Exhibit 3B, which is inserted into, interconnects, and interlocks with the configuration of the filtration head. Exhibit 3A. Water is received through an inlet port in the head and passes into and through the cartridge, an escape port, an outlet line from the head, and then into the machine to which the filtration unit is attached. The head includes a manual valve which shuts off the water inlet. The valve control lever interlocks with a collar to prevent rotation of the cartridge and therefore connection until the valve is closed. The pressure within the filtration unit is diffused upon the disconnection of the cartridge.

The filter cartridge wears out, requiring periodic replacement during the much longer life span of the head. Replacing the cartridge requires no tools, eliminates the need for a remote water shut-off, is relatively simple and quick to accomplish, involves no spillage, and can be done without pressure in the waterline or the filtration unit as it is diffused before disconnection and the interlock prevents rotation of the collar until the water supply valve is closed.

Defendant also manufactures and sells water filters, Exhibit 5A, and replacement cartridges. Exhibit 5B. Its cartridges are designed to be used with its filtration head and in such form are not compatible with plaintiff's head. To broaden its access to the replacement cartridge market, defendant has manufactured an adapter, Exhibit 6A, which is designed to be attached to defendant's cartridge. The adapter duplicates the configuration of the neck of plaintiff's cartridge and thus permits one of defendant's cartridges to be inserted into and interlocked with one of plaintiff's heads. The adapter is not shown to have any useful purpose other than to permit defendant's cartridges to be used with plaintiff's filter head. Defendant markets its filters for such use at competitive prices, supplying the adapter without additional charge to owners of a head supplied by plaintiff.

## II. *Claims*

Plaintiff alleges contributory infringement of claims 1, 4, 5 and 6, which describe the filter head, the filter, cartridge, and the clamping mechanism created by the interrelated configurations of its cartridge and head. Because the patent covers the filter head and cartridge in combination, the claim of infringement must pertain to the combination. Yet defendant does not manufacture nor sell a head comparable to plaintiff's, only the cartridge, providing the adapter to permit use of its cartridge with plaintiff's head. Thus, until defendant's cartridge is connected by its adapter to the head manufactured by plaintiff, there is no infringement. Defendant's alleged infringement occurs because it contributes to and/or induces the user to connect defendant's cartridge with plaintiff's head by use of the adapter. 35 U.S.C. § 271(b) and (c).[3] Plaintiff seeks injunctive relief to pre-

---

**2.** Replacement filter cartridges vary in length and internal filtering configurations for specific uses, variations which are not relevant here. It is the configuration of the upper end of the cartridge that interconnects and interlocks with the head unit that is the subject of the '171 patent.

**3.** Section 271, in pertinent part, provides:
(b) Whoever actively induces infringement of a patent shall be liable as an infringer.

(c) Whoever sells a component of patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

serve its patent and the attendant market monopoly.

Defendant claims: (1) Its sale of cartridges for use with its adapter constitutes a permissible repair and not an infringement; (2) plaintiff's unrestricted sale of its heads creates an implied license and defendant thus cannot be found to infringe; (3) plaintiff's claim constitutes misuse of its patent; (4) plaintiff is barred from enforcement of its patent by reason of its inequitable conduct before the United States Patent Office ("USPO"); and (5) plaintiff's patent is invalid by reason of sale and use prior to patent application.

## III. *Discussion*

As a favorable ruling on defendant's motion would resolve the case, thus moot plaintiff's motion for a preliminary injunction, defendant's motion will be considered first.[4]

### A. Summary Judgment Standard

Summary judgment may properly be granted where there is no dispute as to the material facts and it is clear that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). A court is not authorized to resolve factual questions on such a motion; rather, its task is to determine if any such factual questions exist. If such questions exist, and if they are material to the claims in issue, then the non-moving party has met its burden and summary judgment is improper. *Palumbo v. Don–Joy Co.*, 762 F.2d 969, 973–74 (Fed.Cir.1985); *Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1260–61 (Fed.Cir.1985). "Further, as an additional precaution against denying a party its chance to prove a worthy case, any doubt as to the presence or absence of disputed issues of material fact must be resolved in favor of the presence of disputed issues, or in other words in favor of the party opposing summary judgment." *Lemelson*, 760 F.2d at 1261.

The onus placed upon a movant for summary judgment on a claim of inequitable conduct is especially heavy, as the claim necessarily involves determinations as to the intent of the party accused of practicing the fraud and the materiality of his alleged misrepresentations or omissions—issues which are typically not appropriate for resolution in a summary fashion. *Kangaroos U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1573–74, 1577 (Fed.Cir.1985) (holding that evaluation of the intent element of inequitable conduct "is rarely enabled in summary proceedings"). Furthermore, in relation to a claim of infringement, summary judgment is proper where there is no genuine issue of material fact, the claims are properly construed and a finding of infringement is impossible. *Porter v. Farmer's Supply Serv., Inc.*, 790 F.2d 882, 884 (Fed.Cir.1986).

### 1. *Permissible Repair*

Defendant first asserts its sales are permissible repair. 4 D. Chisum, *Patents*, § 16.03[3] (1987). This principle permits one lawfully using something covered by a patent to preserve and maintain the item in a usable, functional status by repairing the item, including replacing its component parts, without being accused of infringement. If the user has not directly infringed, there likewise can be no contributory infringement, *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 340–46, 81 S.Ct. 599, 601–05, 5 L.Ed.2d 592 (1981) ("*Aro I*"), nor induced infringement, *Met–Coil Systems Corp. v. Corners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed.Cir. 1986). *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 497, 84 S.Ct. 1526, 1537, 12 L.Ed.2d 457 (1964).

Defendant asserts the principle is applicable here because patent '171 involves a filter head which has a longer lifespan, Deposition of Richard Suda, Vol. 2, ¶¶ 19–21 (30–40 year lifespan), than the filter cartridge, *id.* at Vol. 1 at 156; Vol. 2 at

---

4. Denial of defendant's motion would permit consideration of plaintiff's motion without compromise of either party.

22–23 (3–12 month lifespan), and which, therefore, contemplates that the cartridge will be periodically replaced. In effect, defendant argues that one who purchases a filter unit covered by plaintiff's combination patent has the right to replace the cartridge without being limited to doing so with a cartridge supplied by plaintiff, but rather has the right to use any replacement cartridge. From this argument, it would follow that defendant has the right to supply a replacement cartridge made by defendant, including an adapter for compatibility.

Plaintiff's filter head fixes the unit in place, channels the water into and out of the filter cartridge and, by its configuration, in conjunction with the configuration of the cartridge, receives and holds the cartridge in place with the functional features set forth above. The internal design and make-up of the cartridge performs the actual filtering. The patent covers the entire unit, or combination of elements, and the totality of the patent claims. *Aro I,* 365 U.S. at 344, 81 S.Ct. at 603. Neither the head nor the cartridge, apart from their configuration as designed to permit their interconnection, are claimed to be separately protected by the '171 patent. Rather, the patent covers the combination of the two elements. The stated purpose of the patent, the description of the components and their interrelationship, the asserted unique features and advantages of the invention's function, in addition to the claims, make the patent one of totality. Indeed, the drawings display only the function, the uniqueness, the configurations of the head and the cartridge as they achieve interconnection. Thus, the patent protects the interconnection of the head and the cartridge, the configurations of the head and the cartridge as they achieve the interconnection and the features produced in relation to the combined unit's function by the particular interconnection.[5]

Plaintiff does not dispute the repair principle, but claims the law authorizes only permissible repairs, not the reconstruction of a product as defendant has allegedly perfected by use of its adapter. Plaintiff relies on *Aro I.* Aro manufactured replacement convertible top fabrics "designed to fit the models of convertibles equipped with tops embodying the combination covered by the patent in suit." *Aro I,* 365 U.S. at 338, 81 S.Ct. at 600. The patent in issue included "a mechanism for sealing the fabric against the side of the automobile body in order to keep out the rain." *Id.* at 337, 81 S.Ct. at 600. The question decided by the Court of Appeals was whether Aro made " 'a permissible replacement of a part [the fabric] which expectedly became worn out ... sooner than other parts of the combination' " or " 'a forbidden reconstruction of the construction.' " *Id.* at 338, 81 S.Ct. at 600, quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 270 F.2d 200, 202 (1st Cir.1959). The Supreme Court saw the question as "whether the owner of a combination patent, comprised of unpatented elements, has a patent monopoly on the manufacture, sale or use of the several unpatented components of the patented combination." *Aro I,* 365 U.S. at 338–39, 81 S.Ct. at 600–01. It decided that neither the fabric nor its shape has been patented.

Defendant's standard filter cartridge does not have the cam surfaces nor interfacings that correspond to plaintiff's filter head. Instead of making its filter cartridge in a configuration to match plaintiff's filter, defendant has designed an adapter to make its cartridge the functional equivalent of plaintiff's cartridge. Thus, the question to be decided is: Does defendant's filter cartridge, with its adapter, constitute a repair or reconstruction as that issue has been defined by *Aro I* and its progeny?[6]

---

5. *See Dawson Chem. Co. v. Rohm & Haas Co.,* 448 U.S. 176, 217, 100 S.Ct. 2601, 2623, 65 L.Ed. 2d 696 (1980) (claim interpretation is a question of law); *Moeller v. Ionetics, Inc.,* 794 F.2d 653, 565 (Fed.Cir.1986).

6. There is no dispute as to the physical facts presented by defendant's cartridge and the adapter, nor how they function in relation to plaintiff's filter head. Thus, the only question is one of law. *Dana Corp. v. American Precision Co.,* 827 F.2d 755, 758–59 (Fed.Cir.1987).

It is not without significance that the cartridge consists of the internal material which accomplishes the filtering process. Specifically, the casing contains the filtering element which receives, filters, and discharges the fluid from and to the filter head to which it interconnects. It is the filtering element, not the casing, which eventually wears out. Yet, the patent speaks of "a replaceable filter unit." Exhibit 1 at 1. The objects of the patent are a quickly and easily removable filter unit achieved by a clamping collar which connects the filter unit and head. When used in conjunction with the pressure vessel, the clamping collar allows for the assembly and disassembly of the filter unit and head while it is under pressure without the loss of fluid.

The invention provides a unit of simple construction and use with a minimum number of parts. *Id.*, Col. 1–2. The preferred embodiment intends that the entire filter unit will be disposable and replaced, but the cartridge could be reusable with a need then to replace only the filter element. *Id.*, Col. 5, 6. There could be three parts to the filter unit, a pressure container, the internal filter element, and "closure members [which] would be detachably secured in the upper part of the pressure vessel." *Id.*, Col. 5, Lines 35–37. However, the purposes of the invention are best achieved by a single filter unit as described in the patent diagrams. *Id.*, Col. 5, Lines 40–49. Anything other than the preferred embodiment would appear to lose the advantages stressed in the description of the patent's objects, such as changing only the filter element. *Id.*, Col. 6, Line 37, *et seq.* None of the claims treat the filter unit as separable into parts. Plaintiff's choice of patent claims does not permit it to claim an infringement based on what it might have done to isolate the part subject to wear.

▪ *Aro I* holds that a patent must be viewed in its entirety. "No element, not itself separately patented, that constitutes one of the elements of a combination patent is entitled to patent monopoly, however essential it may be to the patented combination and no matter how costly or difficult replacement may be." *Aro I*, 365 U.S. at 345, 81 S.Ct. at 604. In relation to the repair doctrine, that means that courts are not to distinguish between a repair and a reconstruction merely because of the significance of the cost of the replaced or repaired item or because of the duration of its lifespan. *Id.* at 343–44, 81 S.Ct. at 603–04. "[T]here is no legally recognizable or protected 'essential' element, 'gist' or 'heart' of an invention in a combination patent." *Id.* at 345, 81 S.Ct. at 604, citing *Mercoid Corp. v. Mid–Continent Co.*, 320 U.S. 661, 667, 64 S.Ct. 268, 272, 88 L.Ed. 376 (1944); *Mercoid Corp. v. Minneapolis–Honeywell Co.*, 320 U.S. 680, 684, 64 S.Ct. 278, 280, 88 L.Ed. 396 (1944). Simply put, the right of a patent covering a combination of parts is "to preserve [the patented combination's] fitness for use so far as it may be affected by wear or breakage." *Leeds & Catlin Co. v. Victor Tolling Mach. Co.*, 213 U.S. 325, 336, 29 S.Ct. 503, 506, 53 L.Ed. 816 (1909). Preservation of the combination patent by replacement of a spent, unpatented element does not constitute reconstruction. Reconstruction occurs only when a new article is made. *United States v. Aluminum Co. of America*, 148 F.2d 416, 425 (2d Cir.1945). *See also Aro I*, 365 U.S. at 355, 81 S.Ct. at 609 ("none but the most extraordinary case" would require a determination that "there has actually been a new 'making' of the patented article"). Plaintiff, relying on *Leeds & Catlin Co.*, argues that defendant's adapter and replacement cartridge, as connected to plaintiff's filter head, constitutes a reconstruction. In *Leeds*, infringement was claimed in the sale of records which could be played on patentee's voice reproducing machine. There, the records were not provided to permit continued use of the voice machine, but to expand the repertory of sound playable on patentee's machine by making available sound records other than records sold by patentee. The Court, holding that a combination patent applies to the combination as a unit, found that the record, or disc, interacted with the voice machine and constituted the patented combination. The discs, while fragile, were not perishable. Thus, the discs of the alleged

infringer were not purchased nor sold to replace worn discs, but to provide new discs with different recorded sound. They were thus an addition to a disc collection, not replacements.[7] This scenario in *Leeds,* however, is not comparable to Everpure's filter elements which do wear out and require replacing to preserve the functioning quality of the unit.

In *Porter,* plaintiff sold a tomato harvester which incorporated a patented header. The header included a mechanism for driving the disks and a structure for supporting, positioning and adjusting the disks which rotated and were in contact with the plants. The disks were integrated into the header. A disk's life was measured in weeks, while a harvester would last five or six years. Plaintiff sold replacement disks for use on the patented header, as did defendant. Plaintiff sued, claiming defendant infringed the patent. The claims which allegedly were infringed described the harvesting process and the mechanism of the header, including the disks, by which the harvest is accomplished. The Court of Appeals sustained a finding of permissible replacement as replacement of worn disks did not constitute reconstruction. It held that, since the machine owner could not be found liable for infringement as he was merely replacing the spent disks—albeit with defendant's product—to restore his machine to operating quality, neither could defendant be held liable for indirect infringement.

A review of just some of the case law illustrates the applicability of the repair doctrine to patent '171 and defendant's alleged infringement thereof. *See Wilson v. Simpson,* 9 How. 109, 123, 13 L.Ed. 66 (1850) (planing machines' cutting knives could be replaced without violating patent; purchaser is entitled "to give duration to that which he owns"); *Heyer v. Duplicator Mfg. Co.,* 263 U.S. 100, 101, 44 S.Ct. 31, 32, 68 L.Ed. 189 (1923) (replacement of gelatin bands in a patented copying machine did not constitute reconstruction); *Dana Corp.,* 827 F.2d at 759–60 (replacement of

component parts of a patented heavy-duty truck clutch because of wear was not reconstruction); *National–Standard Co. v. UOP, Inc.,* 616 F.2d 339 (7th Cir.1980) (replacement of sieve in apparatus for separating fine grain solids not reconstruction); *Wells Mfg. Corp. v. Littlefuse, Inc.,* 547 F.2d 346 (7th Cir.1976) (replacing switches in a patented vehicle stoplight mechanism not reconstruction); *Gillette Safety Razor Co. v. Standard Safety Razor Co.,* 64 F.2d 6, 17 (2d Cir.), *cert. denied,* 290 U.S. 649, 54 S.Ct. 66, 78 L.Ed. 562 (1933) (blades replaceable in razor).

■ Here, it is the combination that is protected. The cartridge is not. Defendant is neither contributing to nor inducing a direct infringement of plaintiff's product. A purchaser of plaintiff's filter unit is free to replace the worn out filter cartridge and the fact that it requires a particular cartridge configuration to mate it to the head does not alter the legal principle. The filter cartridge is simply a component in a patented combination and the owner has the right to preserve the useful life of the combination by replacement of worn, unpatented components. Defendant's sale of a unit with an adapter to permit that mating is no different than selling a single cartridge that conforms to the configuration of the head. This does not constitute infringement as a matter of law. *Special Equip. Co. v. Coe,* 324 U.S. 370, 376, 65 S.Ct. 741, 744, 89 L.Ed. 1006 (1925) (unpatented part of a combination patent may be appropriated by anyone).

### 2. *Implied License*

■ Defendant argues that the purchaser of a filter unit designed by plaintiff obtains an implied license to use the filter head without the requirement of any further payment to plaintiff. This implied license arises because the filter unit design contemplates that the filter cartridge will have to be periodically replaced.

The facts demonstrate that plaintiff imposes no restrictions on the buyers of its filter units. The unit is, of course, of no

---

7. Plaintiff cites no other case as involving comparable facts and holding that infringement occurred on the basis of a reconstruction rather than a permissible repair.

732

use to an owner except to perform the filtering function for which it was designed and in accordance with the patent. Furthermore, as the filter element only lasts a limited time, and as plaintiff manufactures replacement cartridges, the unit is clearly not intended to be limited to the useful life of the filter element. It will be replaced from time to time during the useful life of the head. While these facts do not suggest that plaintiff's purchasers had an express license to use the filter head with replacement cartridges, they certainly suggest that such a license was implied. *United States v. Univis Lens Co.*, 316 U.S. 241, 249–51, 62 S.Ct. 1088, 1092–93, 86 L.Ed. 1408 (1942). It is only reasonable that a buyer would expect to use the unit for its designed purpose. *Beckman Instruments, Inc. v. Technical Development Corp.*, 730 F.2d 1076, 1086 (7th Cir.), *cert. denied*, 469 U.S. 858, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984). Such a license gives plaintiff's purchasers the right to use replacement cartridges designed by defendant and protects defendant from a claim of infringement. *Met–Coil Systems Corp.*, 803 F.2d at 686.

Plaintiff has cited no case and made no sound argument to support the inapplicability of the implied license principle. It suggests questions of fact which are non-existent. Conceding the right to repair, plaintiff claims it sells no heads except with a filter cartridge. Assuming this to be the case, it does not present a dispute and does not take the sale out of the reach of an implied license. The limited warranty, extending beyond the life of the cartridge is likewise irrelevant and so also is the patent notice embossed on the units. The several claims are irrelevant absent a showing of publication of the patent to users. Further, they have no implication relevant to this issue. Plaintiff's cited authorities are not comparable to the facts in this case.

*Summary*

Plaintiff has not demonstrated any genuine issue of material fact on either of defendant's claims. As a matter of law, it is found that defendant's filter cartridge and adapter do not infringe on patent '171 inasmuch as it is a permissible repair and with-

in an implied license authorized by plaintiff. These principles apply to plaintiff's filtration unit as covered by its combination patent. Absent direct infringement, there can be neither contributory nor induced infringement. Defendant is entitled to summary judgment as a matter of law.

Defendant's claims of patent misuse, inequitable conduct before the USPO and patent invalidity due to prior sales, and plaintiff's motion for preliminary injunction need not be decided.

Judgment shall enter for defendant.

B. Attorney Fees

Plaintiff has neither briefed nor argued defendant's claim for attorney fees. Notwithstanding Local Rule 9(b), it will not be presumed that plaintiff concedes the point. The failure, however, as providing no help to the court on the issue, can hardly be said to reflect a thoroughly professional approach.

■ Attorney fees are properly awarded in exceptional cases. 35 U.S.C. § 285. Bringing a case premised on untenable assertions of legal premises is a basis for such an award. A review of plaintiff's memorandum relative to the issues, discussed *supra*, reflects its paucity of authority supporting plaintiff's position and the imprecision in the way those cases have been analyzed. They all suggest the weakness of plaintiff's case, but weakness in itself does not mandate an award of fees. *Porter*, 790 F.2d at 886. Plaintiff's patent had a singular quality in that its purposes and uniqueness were formed in the coupling of the two units, the head and the cartridge. While this has been found to be the epitome of the combination patent, the assertion of the patent right is not found to have been so unsound as to have been frivolous. The combination patent, by definition, encompasses the cartridge. Plaintiff could have reasonably believed, therefore, that the cartridge was likewise patented separate and apart from the combination itself. It could also have reasonably believed that the combination of its filter head with defendant's adapter and car-

tridge constituted a reconstruction of patent '171. Unfortunately, the law does not support this proposition. While plaintiff's claims were not carefully analyzed before suit was brought, the claim of patent protection is not deemed so far overreaching as to make this an exceptional case. As was noted in *Porter,* minds could differ on this point, but it is not the view here that plaintiff's claims are so illogical or unreasonable to warrant a fee award. *See also CTS Corp. v. Piher Int'l Corp.,* 727 F.2d 1550, 1558 (Fed.Cir.1984). Rather, they simply cannot be sustained in accordance with the law.

Moreover, it has not been clearly shown that reasonable inquiry was not made before suit was brought. Fed.R.Civ.P. 11. Though plaintiff's position has not been accepted, it cannot be said that it was totally devoid of merit. Fed.R.Civ.P. 11. *See Eastway Constr. Corp. v. City of New York,* 762 F.2d 243 (2d Cir.1985).

SO ORDERED.

### JUDGMENT

This action having come on for consideration of the plaintiff's motion for preliminary injunction and the defendant's motion for summary judgment before the Honorable Peter C. Dorsey, United States District Judge, and

The Court having considered the full record of the case including applicable principles of law, and the Court having filed its Ruling on Motion for Preliminary Injunction and Motion for Summary Judgment, granting the motion for summary judgment in favor of the defendant,

It is accordingly ORDERED, ADJUDGED and DECREED that judgment be and is hereby entered in favor of the defendant.