**ROHM & HAAS COMPANY, Appellee,**

v.

**CRYSTAL CHEMICAL COMPANY and Joe C. Eller, Appellants.**

**Appeal No. 83–599.**

United States Court of Appeals, Federal Circuit.

May 29, 1984.

Certiorari Denied Oct. 1, 1984. See 105 S.Ct. 172.

---

Ned L. Conley, Houston, Tex., argued for appellants. With him on the brief were William E. Shull, Jon E. Hokanson and Jeffrey W. Tayon, Houston, Tex.

Rudolph E. Hutz, Wilmington, Del., argued for appellee. With him on the brief were Januar D. Bove, Jr., F.L. Peter Stone and Jeffrey B. Bove, Wilmington, Del.

George W.F. Simmons, Philadelphia, Pa., of counsel.

Before RICH, KASHIWA, MILLER, SMITH and NIES, Circuit Judges.

## ORDER

RICH, Circuit Judge.

Crystal Chemical Company and Joe C. Eller (hereinafter Crystal), appellants, have filed:

(1) Appellants' Application for Attorney Fees and Expenses Incurred on Appeal Pursuant to 35 U.S.C. § 285.

(2) Appellants' Motion for Costs on Appeal Pursuant to FRAP Rule 39 and for Reconsideration of Assessment of Costs.

We consider these two matters seriatim.

### I. *Attorney Fees*

The application filed December 21, 1983, for attorney fees and expenses incurred *on the appeal*, decided by our opinion at 722 F.2d 1556, 220 USPQ 289 (Fed.Cir.1983), has been considered. Although appellee Rohm & Haas Company (R & H) was not directed by us to respond under Federal Circuit Local Rule 20,[1] its opposition to the application has been considered, as have Crystal's reply to the opposition and R & H's response to the reply, both also unsolicited. In the future, however, parties be-

fore this court will be expected to adhere to the rule.

Crystal's motion, filed pursuant to Rule 20, submits that 35 U.S.C. § 285 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.") authorizes this court to award attorney fees for an appeal, and that the "exceptional" circumstances of this case merit such an award. For the reasons which follow, we decline Crystal's application for attorney fees, and its motion is hereby denied.

Crystal maintains that this is an exceptional case under § 285 because of our holding that the R & H patent in suit was invalid due to uncured "fraud in the patent office" by R & H during its prosecution of the application for the patent in the U.S. Patent and Trademark Office (PTO). In addition to fraud in the PTO, Crystal alleges that "Rohm and Haas' conduct during this appeal has unnecessarily increased the attorney fees, expenses and costs." These increased costs are attributed largely to an alleged attempt by R & H "to snow this Court with a 'mountain of largely irrelevant' record designations," and to alleged attempts by R & H to "frustrate presentation of this case and drive up" expenses.

R & H denies the allegations of improper actions in its conduct of the appeal and that its actions in the PTO render the case exceptional. As to the latter, R & H submits that it attempted to cure earlier misrepresentations in the PTO by subsequently disclosing all of its relevant experimental data to the PTO. Our earlier opinion held, however, that the attempted cure by R & H of its intentional material misrepresentations was "insufficient as a matter of law," 722 F.2d at 1573, 220 USPQ at 302.

The awarding of attorney fees under § 285 for an "exceptional" *appeal* is a question of first impression in this court. It is also an issue that was rarely addressed by other circuits. Because of

---

1. Rule 20(a)(1) states in part that the "court may award attorney fees and expenses" and that "[n]o response shall be filed to an application unless directed by the court, but no application will be granted without an opportunity to submit a response." Although the rule was revised effective February 1, 1984, the quoted language above was unchanged.

these circumstances, we first review the evolution of the statutory and case law on this subject and examine its public policy underpinnings, before considering the merits of Crystal's application for attorney fees.

The federal courts of the United States early adopted what has become known as the "American Rule" in the handling of attorney fee requests. Unlike countries which follow the "English Rule," our courts do not routinely assess attorney fees against the losing party. The American Rule was recognized by the Supreme Court as early as 1796 in *Arcambel v. Wiseman*, 3 U.S. (3 Dall.) 306, 1 L.Ed. 613, and, simply put, proscribes the award of fees absent statutory authorization or particularly compelling circumstances. The policy behind the Rule is fundamental—to avoid penalizing a party "for merely defending or prosecuting a lawsuit." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967).

The colonial courts in America frequently adopted the English Rule. Colonial and, later, state legislatures did, however, regulate this practice, by prohibiting the award of fees, or in some instances by adopting specified fee limits as noted in *Day v. Woodworth*, 54 U.S. (13 How.) 363, 372, 14 L.Ed. 181 (1851). Early federal statutes authorized the federal courts to adopt the attorney fee practice of their respective states. Act of September 29, 1789, § 2, 1 Stat. 93. Provisions for the award of attorney fees in federal law is a more modern occurrence.

The trend in statutory evolution since the mid-1800's has been toward specific authorization for the award of attorney fees. For example, the Interstate Commerce Act of 1887, 24 Stat. 379; the Clayton Act of 1914, 15 U.S.C. § 15; and the Toxic Substances Control Act of 1976, 15 U.S.C. § 2618(d)

have all contained such provisions. Many of these statutes allow the award of attorney fees for the purpose of encouraging suits to vindicate congressional policy by "private attorneys general." Notwithstanding the general American policy, particular circumstances have been held to justify an equitable award of attorney fees absent explicit statutory authorization. Such circumstances include instances involving a party acting in contempt or bad faith, or where a contractual agreement for fees existed between parties. See generally, Derfner and Wolf, *Court Awarded Attorney Fees*, ¶ 1.02 (1983).

Other statutory provisions have been enacted so as to further equitable considerations, in suits where encouragement of citizen suits is not applicable, as in the case of the present patent statute, § 285, and its predecessor for the purpose of enabling a court to prevent gross injustice.

Prior to 1946, the Supreme Court, following the American Rule, had held that the award of attorney fees based upon equitable considerations was not available in patent cases.[2] However, in that year Congress amended § 4921 of the Revised Statutes to alter the type of damages recoverable for infringement, and added an attorney fee provision to that section:

> The court may in its discretion award reasonable attorney's fees to the prevailing party upon the entry of judgment on any patent case. . . .[3]

The Senate Report concerning this provision noted its applicability to prevailing patentees as well as to prevailing alleged infringers, and emphasized that the award should not become "an ordinary thing":

> It is not contemplated that the recovery of attorney's fees will become an ordinary thing in patent suits, but the discretion given the court in this respect,

**2.** See for example, *Day*, supra; *Teese v. Huntingdon*, 64 U.S. (23 How.) 2, 8, 16 L.Ed. 479 (1859) ("Counsel fees are not a proper element for the consideration of the jury in the estimation of damages in actions for the infringement of a patent right."); *Philp v. Nock*, 84 U.S. (17 Wall.)

460, 21 L.Ed. 679 (1873); and *Parks v. Booth*, 102 U.S. 96, 26 L.Ed. 54 (1880).

**3.** Act of August 1, 1946, § 1, 60 Stat. 778, 35 U.S.C. § 70 (1946 ed.).

in addition to the present discretion to award triple damages, will discourage infringement of a patent by anyone thinking that all he would be required to pay if he loses the suit would be a royalty. The *provision is also made general so as to enable the court to prevent a gross injustice to an alleged infringer.* [Emphasis added.][4]

Subsequent to the 1946 amendments, attorney fee awards were granted by the courts, in their discretion, primarily upon findings of extraordinary circumstances. An early and leading decision ably summarized the policy behind this statutory waiver of the American Rule for attorney fees in the patent law context:

> Thus, the payment of attorney's fees for the victor is not to be regarded as a penalty for failure to win a patent infringement suit. *The exercise of discretion* in favor of such an allowance *should be bottomed upon* a finding of *unfairness or bad faith in the conduct of the losing party,* or some other equitable consideration of similar force, *which makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his own counsel fees* which prevailing litigants normally bear. [Emphasis added.][5]

The next and most recent revision of the pertinent section of the patent statutes, the Patent Act of 1952, codified the attorney fee provision in 35 U.S.C. § 285, which omits explicit reference to the court's discretion but adds the qualifier that the court *may* award reasonable attorney fees *in "exceptional cases."* The Revision Note to this section, as restated later by its author, shows that:

> Section 285, providing for the recovery of attorney fees by the prevailing party, is substantially the same as the corresponding sentence of the old statute, with the addition of "in exceptional cases" to express the intention of the old statute as shown by its legislative history and as interpreted by the courts.[6]

Cases decided under § 285 have noted that "the substitution of the phrase 'in exceptional cases' has not done away with the discretionary feature." *Hoge Warren Zimmerman Co. v. Nourse & Co.,* 293 F.2d 779, 783, 130 USPQ 382, 386 (6th Cir.1961).

Cases awarding attorney fees to prevailing patentees have typically found "exceptional" circumstances in willful and deliberate infringement by an infringer, or in the prolongation of litigation in bad faith.[7] When prevailing alleged infringers are awarded attorney fees, "exceptional" cases have involved litigation in bad faith by the patentee, or fraud or other inequitable conduct during prosecution before the

---

**4.** S.Rep. No. 1503, 79th Cong., 2d Sess. (1946), *reprinted in* 1946 U.S.Code Congressional Service 1386, 1387.

**5.** *Park-In Theatres, Inc. v. Perkins,* 190 F.2d 137, 142, 90 USPQ 163, 167 (9th Cir.1951). Also, *see, e.g., American Chain & Cable Co. v. Rochester Ropes,* 199 F.2d 325, 330, 95 USPQ 115, 119 (4th Cir.1952) ("the discretion should not be exercised except in situations involving vexatious and unjustified litigation on the part of the patentee") (reversed with respect to counsel fees award to alleged infringer); *Laufenberg, Inc. v. Goldblatt Bros., Inc.,* 187 F.2d 823, 825, 89 USPQ 5, 6 (7th Cir.1951) ("An award of attorney's fees under R.S. § 4921 is not the usual or customary procedure in a patent suit.... Other courts have said that such fees may be awarded to prevent gross injustice ... and that the statute should be invoked only where vexatious or unjustified litigation is shown [citations omitted]")

(affirming denial of award to alleged infringer); and *Lincoln Electric Co. v. Linde Air Products Co.,* 74 F.Supp. 293, 294, 75 USPQ 267, 267–68 (N.D.Ohio 1947) ("It is apparent from the wording of the statute and its history that an award of attorneys' fees should not be made in an ordinary case. The court is invested with discretionary power where it is necessary to prevent gross injustice.").

**6.** P.J. Federico, Commentary on the New Patent Act, Title 35, United States Code Annotated, page 1, at 56.

**7.** *See, e.g., Milgo Electric Corp. v. United Business Communications, Inc.,* 623 F.2d 645, 206 USPQ 481 (10th Cir.1980). *See also* Alan M. Ahart, *Attorneys' Fees: the Patent Experience,* 57 J. Pat. Office Soc. 608 (1975); and 5 D. Chisum, *Patents,* § 20.03[4] at note 99, and accompanying text, for an extensive list of case citations.

PTO.[8] We are also cognizant of the frequently-cited policy considerations in support of the award of attorney fees to a party who succeeds in invalidating "fraudulent" patents, *cf. True Temper Corp. v. CF & I Steel Corp.*, 601 F.2d 495, 509, 202 USPQ 412, 423 (10th Cir.1979); and *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Co.*, 407 F.2d 288, 294, 160 USPQ 577, 581 (9th Cir.1969). We support this proposition only to the extent that a prevailing alleged infringer should be awarded attorney fees only when it would be unjust not to make such an award.

Neither § 285 nor its legislative history distinguishes between awarding attorney fees in the district court and in the appellate court. We recognize that the district court is the forum in which requests for attorney fees are almost invariably made. We also recognize that the American rule against the award of attorney fees, in the absence of a statute or compelling circumstances, developed in order to avoid penalizing parties for asserting their legal rights. In section 285 we have an exception to the American rule, and it was enacted to further a different policy, that of preventing injustice to a party involved in a patent suit, as detailed above. We construe the language of § 285 as applicable to cases in which the appeal itself is exceptional, in furtherance of the latter policy.[9]

There exists limited judicial precedent in support of our ability to award attorney fees under § 285. For example, Crystal relies on *Tidewater Patent Development Co. v. Kitchen*, 371 F.2d 1004, 152 USPQ

36 (4th Cir.1966), *modified in part and pet. for reh. denied*, 371 F.2d 1013, 152 USPQ 656, *cert. denied*, 389 U.S. 821, 88 S.Ct. 46, 19 L.Ed.2d 74 (1967). In *Tidewater*, the Fourth Circuit reversed a trial court which had held the patent in suit valid and had found infringement, and declared the case "exceptional" under § 285 because the patentee had brought suit on a patent that had been "conclusively" demonstrated to be invalid in two other lawsuits. The Fourth Circuit stated that "Whether or not Tidewater had the naked right to relitigate, ... to sue again in the circumstances was an abuse of that right, especially in seeking to recover on grounds renounced [previously] .... To leave appellants ... to bear the expense of defending Tidewater's accusations of infringement upon these facts would be to saddle them with an unjust hardship." [10] The Fourth Circuit accordingly remanded the case with instructions to the trial court to fix the amount of fees for attorneys' services in proceedings at the trial *and appellate* levels.

The Tenth Circuit, in contrast however, has deferred to the trial court by remanding for a determination as to whether attorney fees were merited in a particular case.[11] Although the holding of unenforceability based on misconduct at the PTO was affirmed, the appeals court could not determine whether the trial court had considered that misconduct in its decision to deny attorney fees to the alleged infringer. The Tenth Circuit did assert that "this is a matter which the trial court ought to deter-

---

**8.** See for example, *Colortronic Reinhard & Co. v. Plastic Controls, Inc.*, 668 F.2d 1, 213 USPQ 801 (1st Cir.1981). See also Chisum, *ibid.*, § 20.-03[4] at note 103 and accompanying text.

**9.** We reject R & H's contention that such an award would be "directly contrary to [this] court's pronouncement" in *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 218 USPQ 969 (Fed.Cir.1983). *Stevenson* was concerned with the findings upon which the trial court could award attorney fees, and did not address the question of awarding attorney fees for the handling of the appeal.

**10.** 371 F.2d at 1013, 152 USPQ at 43. Although *Tidewater* predates *Blonder-Tongue Laboratories v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), its rationale is instructive here, i.e., the Fourth Circuit awarded attorney fees when the patentee knew, or should have known that its patent was invalid.

**11.** *True Temper Corp. v. CF & I Steel Corp.*, 601 F.2d 495, 202 USPQ 412 (10th Cir.1979).

mine in the first instance." [12]   In accordance with that decision, R & H argues that it is not the function of an appellate court to decide applications for fees under § 285.

To date, our experience in this court with the award of attorney fees under § 285, although limited, is representative of the developed case law for this section of the Patent Act.   None of the cases so far has dealt with attorney fees on the appeal.   We have upheld a district court's awarding of attorney fees under § 285 to patentees where willful infringement had been proved.   *Rosemount, Inc. v. Beckman Instruments, Inc.,* 727 F.2d 1540, 221 USPQ 1 (Fed.Cir.1984); and *Lam, Inc. v. Johns-Manville Corp.,* 718 F.2d 1056, 219 USPQ 670 (Fed.Cir.1983).   Section 285 also permits the prevailing party to recover certain disbursements incurred during preparation for a case.   *Central Soya Co. v. Geo. A. Hormel & Co.,* 723 F.2d 1573, 220 USPQ 490 (Fed.Cir.1983).

Attorney fee awards have also been affirmed by this court when the basis for finding the case to be "exceptional" was "fraud" in procuring the patent sued upon as well as misconduct during suit and a bad faith assertion of infringement.   *Hughes v. Novi American, Inc.,* 724 F.2d 122, 125, 220 USPQ 707, 710 (Fed.Cir.1984).   Additionally, we have held that cases may be deemed exceptional for reasons other than inequitable conduct during prosecution, *Orthopedic Equipment Co. v. All Orthopedic Appliances,* 707 F.2d 1376, 1384, 217 USPQ 1281, 1287 (Fed.Cir.1983), such as persisting with a suit in the face of knowledge that the asserted patent is invalid, *Hughes,* supra, or "some finding of unfairness, bad faith, or inequitable conduct on the part of" a patentee unsuccessfully bringing an infringement suit, *Stevenson* (supra note 9).

We have affirmed the denial of attorney fees in several cases as well.   For instance, the denial of fees has been affirmed on the basis that a motion, although meritless, was neither frivolous nor brought only for harassment or delay.   *CTS Corp. v. Piher*

*International Corp.,* 727 F.2d 1550, 221 USPQ 11 (Fed.Cir.1984).   *See also, Stickle v. Heublein, Inc.,* 716 F.2d 1550, 1564, 219 USPQ 377, 388 (Fed.Cir.1983), in which an attorney fee award was vacated because the record did not show that numerous defenses had been used vexatiously or for dilatory purposes.   Also in *Stickle,* part of the award related to work on non-patent issues, the fees for which are not allowable under § 285.

On the basis of the preceding review of the state of the law regarding the award of attorney fees under § 285, we now address the present case.   We recognize that our previous holding on the merits, that, as a matter of law, R & H had not cured its earlier fraud in the prosecution of the application for the patent asserted on appeal, breaks new ground on the subject of fraud in the PTO and sets new standards in this area of the law.   Under the circumstances of this case, we cannot hold that R & H's failure to follow this new standard makes it unjust for Crystal to bear its own counsel fees on this appeal from the lower court's decision in favor of R & H.   We furthermore do not agree with Crystal that the record designations of R & H have "snowed" this court with a mountain of irrelevant information, nor do we feel that the conduct of R & H has frustrated presentation of this case.

We hold, therefore, that Crystal shall bear its own attorney fees on this appeal and its request is denied.   We do not decide here whether or not attorney fees may be warranted for the trial below, because considerations other than the invalidity of the R & H patent may bear on the propriety of awarding attorney fees, and we cannot be as familiar with the proceedings below as is the district court.   Thus, any question of attorney fees below must be decided, in the first instance, by that court, exercising its own discretion.

### II. *Costs*

Crystal's "Motion for Costs on Appeal Pursuant to FRAP Rule 39 and for Recon-

---

**12.** *Ibid.,* 601 F.2d at 509, 202 USPQ at 423.

siberation of the Assessment of Costs" must be separated into its two parts: a motion for costs on appeal and a motion for reconsideration. The first part was anticipated by our decision on the merits in this litigation wherein we ended our opinion with a ruling on costs, as Crystal is well aware since its motion quotes what we said, which is as follows:

> We conclude that, under all of the circumstances with which we have necessarily become familiar in deciding this case, it is fair and equitable that the parties share equally the cost of printing the Combined Appendix and that otherwise each party bear its own costs. In accordance with Rule 39(a), it is so ordered. [722 F.2d 1556, 1573; 220 USPQ 289, 303.]

That was a decision under FRAP Rule 39 on the question of who should bear the costs—costs were not to be assessed against either party.

With respect to costs on appeal, therefore, what the motion now before us actually presents is a request for reconsideration of that decision. Reconsideration is granted to the extent that the several arguments presented in Crystal's motion papers and the response thereto by R & H have been carefully reviewed. In all other respects Crystal's motion is denied.

### CONCLUSION

In view of the foregoing, it is HEREBY ORDERED THAT appellants' application for attorney fees and motion for costs on appeal, as recited at the beginning hereof, are DENIED.