**FOUR PILLARS ENTERPRISE COMPANY, LIMITED, Asia Chemical Corporation, Plaintiffs,**

v.

**Chow M. CHANG and Globe Industries Corporation, Defendants.**

Civ. A. Nos. 85–0006, 85–0007.

United States District Court, District of Columbia.

Nov. 12, 1986.

Edward W. Goldstein, J. Paul Williamson, Arlington, Va., Michael Macklin, Patricia N. Brantley, Houston, Tex., for plaintiffs.

William K. West, Jr., Washington, D.C., for defendants.

## MEMORANDUM

GESELL, District Judge.

Plaintiffs by their identical complaints filed simultaneously[1] allege that defendants Chang and Globe have engaged in unfair competition by using a fraudulently procured U.S. patent in an effort to hamper their export of tearable embossed adhesive tape from Taiwan to the United States. They seek only attorney fees in this case. After receiving oral and deposition testimony and numerous exhibits at a bench trial, aided by counsel's briefs and arguments, the Court's findings of fact and conclusions of law, follow.

Plaintiff corporations and defendant Globe are each Taiwanese corporations. Plaintiff Four Pillars manufactures tearable embossed adhesive tape in Taiwan and sells in that country and elsewhere directly or through the other plaintiff Asia Chemical. Defendant Globe also manufactures the same type of tape in Taiwan in competition with plaintiffs. When Globe obtained a U.S. patent for such tape in February, 1979 (No. 4,139,669, hereafter the '669 patent), plaintiffs had already developed exports to the United States. Thereafter Globe publicized the existence of its U.S. patent both in Taiwan and the United States, all with a view to impeding plaintiffs' importation of tape into this country.[2] An attack list was developed of U.S. concerns, which set forth importers or potential importers of tape from Taiwan, and many of these companies were apprised of the '669 patent by Globe.

Plaintiffs contend that Globe obtained the '669 patent fraudulently (now more graciously labelled inequitable conduct) before the U.S. Patent and Trademark Office during the period from August 26, 1971, when an application for the tape patent was first filed, through various Patent Office actions until the patent issued in February, 1979. Globe's prosecution of its U.S. patent was part of a larger strategy by which it sought the same or similar patent protection for variations of the same tape in other countries. The alleged inequitable conduct focuses on Globe's failure to disclose Globe's patent activities in various foreign countries and specifically upon its nondisclosure and affirmative concealment of the fact that by May, 1973, comparable patents constituting highly relevant prior art had issued to Globe both in Australia and Vietnam. Plaintiffs assert that because of this conduct the patent was unenforceable from the outset and Globe's attempts to prevent plaintiffs from importing by publicizing the patent constituted unfair competition. Invalidity of the '669 patent would state a basis for an unfair competition claim but since plaintiffs were unable to prove any commercial damage at trial, their unfair competition claim was reduced to one under 35 U.S.C. § 285 (1982) for attorney fees expended in this litigation.

■ "Inequitable conduct," when considered in the context of patent law, derives from the clear duty of inventors and specifically all attorneys and agents to proceed before the Patent Office with complete candor and good faith, and specifically a duty to disclose any information material to a patent application of which they are aware. *See* 37 C.F.R. § 1.56(a) (1986). This duty is rigidly upheld, and gains significance from the fact that much Patent

1. The complaints were consolidated for discovery and trial. Originally the complaints also sought a declaratory judgment of patent invalidity and non-infringement and alleged violations of the antitrust laws. On October 19, 1985, the inventor, defendant Chang, disclaimed and dedicated the patent to the public with Globe's consent. Eventually all claims but the unfair competition claims were dropped and jury trial waived.

2. This dispute between the parties is apparently but a phase of a running commercial battle between the parties which has persisted in Taiwan and cropped up in other countries over a period of some ten years.

Office practice is *ex parte*. Because failure to make full and complete disclosure carries serious implications for the professional standing of one who fails to make the required disclosure, proof of inequitable conduct requires "clear, unequivocal, and convincing evidence" of such conduct. *Orthopedic Equipment Co. v. All Orthopedic Appliances, Inc.*, 707 F.2d 1376, 1383 (Fed.Cir.1983). *See also Kimberly-Clark Corporation v. Johnson & Johnson*, 745 F.2d 1437, 1454 (Fed.Cir. 1984); *Driscoll v. Cebalo*, 731 F.2d 878, 884 (Fed.Cir.1984); *Oetiker v. Jurid Werke GMBH.*, 671 F.2d 596, 600 (D.C.Cir.1982).

■ In a case involving information not disclosed to the Patent Office, a showing of inequitable conduct must include both proof of a "threshold degree of materiality of the nondisclosed ... information" and of "threshold intent" to withhold it. *J.P. Stevens & Co. v. Lex Tex Ltd., Inc.*, 747 F.2d 1553, 1559–60 (Fed.Cir.1984). Materiality must be assessed with reference to the definition in the patent regulations, 37 C.F.R. 1.56(a) (1986), which states that "information is material where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." *See J.P. Stevens & Co., supra*, at 1559.

■ Direct evidence of intent to withhold is not necessary. Intent "may be proven by showing acts the natural consequences of which are presumably intended by the actor." "[G]ross negligence is sufficient" and "is present when the actor, judged as a reasonable person in his position, should have known of the materiality of a withheld reference." However, "simple negligence, oversight, or an erroneous judgment made in good faith is insufficient" to establish the requisite intent. Once threshold proof of these matters is presented, "the court must balance them and determine as a matter of law whether the scales tilt to a conclusion that inequitable conduct occurred." *Id.* at 1560 (citations omitted).

■ The proof established by a preponderance of the evidence that "inequitable conduct" had in fact occurred before the Patent Office during the prosecution of the '669 patent. It is unnecessary to trace in detail the various steps followed before the Patent Office from the initial filing in 1971 until the '669 patent issued in 1979. There was a failure to disclose from the outset. When the original application was filed, the inventor did not disclose, as required, applications filed earlier in 1971 in Taiwan and Japan and Chang, the inventor, affirmatively swore under oath there were none. This omission was never corrected.

In May, 1973, patents on a variation of the tape issued to Globe in Australia and Vietnam. The patents were more than a year old when a continuation was filed in September, but these patents were not disclosed nor had the applications been earlier disclosed.

Finally, when another continuation was filed in November, 1977, there was still no disclosure although the patent examiner had by then clearly indicated to Globe's American counsel that he wished information about patent protection and patent developments which Globe had encountered abroad when seeking patents on the same or similar tape. In spite of the obvious materiality of the information which the examiner's queries emphasized, disclosure of such information did not occur before the '669 patent issued.

The events shown by this record underlying the failure to disclose will now be traced. Defendant, Chang, one of the owners of Globe and the designated inventor, was required to sign the original application under oath. It was, of course, worded in English for filing with the Patent Office. Ms. Chang cannot speak or read English. Globe was generally unfamiliar with U.S. patent matters at the time and apparently had no technical patent staff. Globe and Ms. Chang relied wholly on outside counsel, a Taiwan patent lawyer named Mr. Lin who, in turn on his own initiative retained counsel in the various countries where patent coverage for the tape was being sought. Mr. Lin understood English and prepared the applications requiring Ms. Chang's signature under oath working in

conjunction with American counsel. He is still alive but was not a witness.

Ms. Chang signed whatever papers she was asked to sign by Mr. Lin as requested. They were not translated for her and their nature was only summarily explained. She took no affirmative steps to determine the full nature of what her sworn signature implied. She was not in frequent consultation with Mr. Lin, leaving day-to-day responsibility in patent matters with a sales representative, one Larry Hwang, who spoke and understood English. Ms. Chang's deposition is in evidence. There is no proof that Ms. Chang failed to act in good faith.

As far as Mr. Lin is concerned, he must be charged with knowledge of what was set forth in the original application and must have known information was being withheld. It should be noted, however, that when U.S. counsel at a later date inquired at the examiner's request about Globe's patent protection and activity in other foreign countries, Mr. Lin sent him the full information in December, 1975. This included disclosure of the key Australian patent as well as other information which had not been disclosed up to that time.

At the times most material to this inquiry Globe was represented before the Patent Office by Anthony Davis, Esquire, then a member of the firm of Landas & Parry, patent attorneys specializing in foreign patent matters. Mr. Davis had been a patent agent and was a lawyer admitted to practice before the Patent Office. His marked deposition is an exhibit in evidence.

Mr. Davis's responsibility for prosecuting the patent commenced in June, 1973, and continued thereafter until February 1979. He was well aware that the examiner had a "feeling in his bones" that there probably were highly relevant foreign prior art references and other information not disclosed. Mr. Davis knew such references existed and that their materiality had been doubly established by the examiner's inquiries as well as statutory implications. *See* 35 U.S.C. § 102(d) (1982). The failure to disclose is apparent on the face of several papers filed by the firm in the prosecution of the '669 patent. In addition to nondisclosure of the specific foreign prior art counterparts, much other significant foreign patent activity of Globe known to Mr. Davis should have been disclosed. *See* 37 C.F.R. § 1.65(a)(1) (1971).

Mr. Davis's role was not solely one of an objective professional. By a personal contract he was to receive three percent of Globe's royalties from the '669 patent and ten percent of any damages recovered from infringers. Since no infringement suits were brought by Globe, Mr. Davis netted only $300 from the arrangement, but its existence is relevant to the issue of intent. It is also clear that he was well informed concerning Globe's efforts to develop tape sales and patent protection, for he visited Taiwan and was in touch by written communications and personal contact with Larry Hwang with whom he conferred both abroad and in this country. Mr. Hwang did not testify and his whereabouts is unknown to the parties.

Thus plaintiffs have established by clear, convincing and unequivocal evidence all elements of inequitable conduct before the Patent Office. There is unrefuted proof of Mr. Davis's gross negligence and the Court need not proceed beyond this finding to draw the requisite inferences of specific intent or knowledge as urged. Gross negligence is sufficient to establish the required intent on Mr. Davis's part. An attorney who knows, or should have known, that there are withheld references that would be material to an examiner's consideration, and fails to disclose them barring any explanation—wholly lacking here—evidences an intent to mislead the Patent Office. *See Driscoll v. Cebalo*, 731 F.2d 878 885 (Fed.Cir.1984); *J.P. Stevens & Co., supra*, 747 F.2d at 1560.

While such inequitable conduct vitiated patent '669, *see J.P. Stevens & Co., supra*, that issue is moot because the patent has been dedicated to the public. Plaintiffs' claim is, as indicated, now only for attorney fees under 35 U.S.C. § 285 (1982), which provides: "The Court in exceptional cases may award reasonable attorney fees

to the prevailing party." In short, award of attorney fees is not automatic once inequitable conduct is shown in the course of patent litigation. The Court is still called on to exercise its discretion and may only award attorney fees in exceptional cases. *See Rohm & Haas Co. v. Crystal Chemical Co.*, 736 F.2d 688, 690–93 (Fed.Cir. 1984).

What constitutes an exceptional case is far from precise, but in this instance plaintiffs have not shown the necessary ingredient of an exceptional case in any conceivable respect.[3] Neither the conduct itself nor its commercial effect warrants an award of the nature suggested here. In exercising its discretion to refuse any attorney fee award, the Court has considered the following factors and circumstances, each clearly established in the record:

(1) Validity of the '669 patent was not affected by nondisclosure.

(2) Plaintiffs were not contestants for the patent in the Patent Office.

(3) Plaintiffs were unable to establish any commercial injury from the alleged unfair competition fostered by Globe's publicizing its patent.

(4) Globe never sued plaintiffs alleging infringement in the years from 1979 until January, 1985, when suit was filed.

(5) Plaintiffs delayed bringing any action challenging the patent, although they must have known there had been a failure to disclose.

(6) This delay has left uncertainties as to where responsibility for the conduct primarily rests.

(7) There is no showing that the inventor withheld or that any withholding of information was with the inventor's knowledge or tacit approval.

(8) Plaintiffs emphasized at the outset other and more serious "inequitable conduct" that they failed to support at trial.

(9) The lump sum fee claimed is undifferentiated as between legal services relating

to the prevailing inequitable conduct claim and the extensive time and effort of counsel on other patent and commercial claims which failed and were abandoned. Moreover, no proof of reasonableness was furnished to the Court.

Judgment shall be entered for defendants and the complaints dismissed with prejudice. Each party shall bear its own costs.

---

3. Because of this determination the Court is not required here to resolve the novel issue lurking in this case, namely, whether a foreign inventor, foreign assignee, or foreign lawyer not shown primarily responsible for the inequitable conduct may be held liable for attorney fees for possibly unauthorized withholding by their U.S. attorney.