**DIPPIN' DOTS, INC., et al., Plaintiffs,**

v.

**Thomas R. MOSEY, et al., Defendants.**

**Civil Action No. 3:96–CV–1959–L.**

United States District Court,
N.D. Texas,
Dallas Division.

March 13, 2009.

D. Scott Hemingway, Hemingway & Hansen, Dallas, TX, Christopher S. Anulewicz, Meadows Ichter & Bowers, Daniel J. Warren, Sutherland Asbill & Brennan, Michael J. Bowers, Balch & Bingham LLP, Atlanta, GA, Elizabeth R. Kessler, Todd E. Stockwell, Stockwell & Associates, Lexington, KY, for Plaintiffs.

Robert G. Oake, Jr., Law Office of Robert G. Oake Jr., Allen, TX, Rudolf Odd Siegesmund, Gordon & Rees, Dallas, TX, for Defendants.

### ORDER

THOMAS W. THRASH, JR., District Judge.

This is a patent infringement case. It is before the Court on Frosty Bites Distribution, LLC's Motion for Appellate Fees [Doc. 1053]. For the reasons stated below, the motion is GRANTED in the amount of $229,642.60.

### I. Background

This case is about a patent for an ice cream product. *See* U.S. Patent No. 5,126,156 (filed Sept. 18, 1991). The manufacturing process for the product involves cryogenic freezing methods to make little beads of ice cream. The patent is owned by Curt D. Jones and exclusively licensed to Dippin' Dots, Inc.

The litigation began in 1996 when Dippin' Dots sued Thomas Mosey for patent infringement for selling a similar ice cream product in Dallas, Texas. The litigation expanded in 2000 when Dippin' Dots sued a group of former Dippin' Dots franchises for patent infringement for selling a similar ice cream product called Frosty Bites. In December 2000, the suits were consolidated for pretrial proceedings by the Judicial Panel on Multidistrict Litigation, and the case was transferred to the United States District Court for the Northern District of Georgia. After the pretrial proceedings were finished, the case was remanded to the Northern District of Texas. In October 2003, there was a jury trial on the issues of the validity of the patent, fraud on the Patent and Trademark Office (PTO), and a *Walker Process*[1] antitrust counterclaim. The jury found for the Defendants on each issue but awarded no damages on the antitrust counterclaim. [Doc. 836].

Both sides filed a number of motions following the jury's verdict. The Plaintiffs filed a motion for judgment notwithstanding the verdict. The motion was denied because there was sufficient evidence to support the jury's verdict. [Doc. 876].

---

1. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965).

The Defendants filed a motion requesting a judgment that the patent is unenforceable due to inequitable conduct before the PTO. The motion was granted because "both the materiality of the misrepresentations and the intent to deceive are of a high nature." [Doc. 906]. Some of the Defendants filed motions for attorney fees. Frosty Bites Distribution, LLC filed a motion for attorney fees under the Clayton Act for fees associated with the antitrust counterclaim. The motion was granted in the amount of $676,675.46. [Doc. 907]. The Manufacturing Parties also filed a similar motion for attorney fees under the Clayton Act for fees associated with the antitrust claim. And Frosty Bites filed another motion for attorney fees under the Patent Act for fees incurred defending against the Plaintiffs' patent infringement claims. But, before these last two motions were decided, this Court entered a final judgment in favor of the Defendants. [Doc. 942].

With a final judgment in place, the Plaintiffs appealed. On March 25, 2005, the Plaintiffs filed a notice of appeal with the United States Court of Appeals for the Federal Circuit. After the notice of appeal was filed, the pending motions for attorney fees were decided by this Court. The Manufacturing Parties' motion for attorney fees under the Clayton Act was granted in the amount of $1,914,724.00. [Doc. 965]. Frosty Bites' motion for attorney fees under the Patent Act was initially granted in the amount of $253,898.06 but was later increased to $504,158.16. [Doc. 985]. The Plaintiffs requested and were granted a stay on the enforcement of this fee award. [Doc. 988]. On November 18, 2005, the Court of Appeals activated the appeal and set a briefing schedule. The Plaintiffs' opening brief included challenges to the fee awards granted after the notice of appeal was filed. But the Plaintiffs failed to file a supplemental notice of appeal that included those fee awards. The Court of Appeals, therefore, held that there was no jurisdiction to hear challenges to those fee awards. *Dippin' Dots v. Mosey*, No. 05–1330, slip op. at 3 (Fed. Cir. May 1, 2006).

On February 9, 2007, the Court of Appeals affirmed in part and reversed in part this Court's judgments. *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1339 (Fed. Cir.2007). The Court of Appeals affirmed the judgment that the patent is invalid. "The factual underpinnings implicit in the jury's verdict [as to validity] are supported by substantial evidence." *Id.* at 1345. The Court of Appeals also affirmed the judgment that the patent is unenforceable due to inequitable conduct. "[T]he district court was permitted to balance the relatively weak evidence of intent together with the strong evidence that [Dippin' Dots'] omission was highly material ... and to find that on balance, inequitable conduct had occurred." *Id.* at 1346. But the Court of Appeals reversed the judgment for the antitrust counterclaim. "The difference in breadth between inequitable conduct and *Walker Process* fraud admits the possibility of a close case whose facts reach the level of inequitable conduct, but not of fraud before the PTO. This is such a case." *Id.* at 1347. Without a basis for liability under antitrust laws, the Court of Appeals vacated the Clayton Act fee awards to Frosty Bites and the Manufacturing Parties. *Id.* at 1349. The Court of Appeals did not, however, vacate the Patent Act fee award to Frosty Bites. Indeed, the Court of Appeals remanded the case "for the district court to consider whether an additional fee award under the patent statute is available." *Id.*

Both sides filed a number of motions following remand to this Court. The Plaintiffs filed a motion to vacate the Patent Act fee award to Frosty Bites. The

motion was denied because "the inequitable conduct ruling provides an adequate basis for the [Patent Act] fee award." [Doc. 1025]. Frosty Bites filed a motion to lift the stay on the Patent Act fee award to Frosty Bites. The motion was granted because that award was "final, unappealed, and unappealable." *Id.* Some of the Defendants filed new motions for attorney fees. The Manufacturing Parties filed a motion for attorney fees under the Patent Act. They requested essentially the same fees that they had originally been awarded under the Clayton Act. The motion was granted in the amount of $1,918,671.91. *Id.* The motion was granted because defending against the Plaintiffs' patent infringement claims involved the same basic work that was required for the antitrust counterclaim. *Id.* Frosty Bites also filed a motion for additional attorney fees under the Patent Act. Although Frosty Bites had already been awarded attorney fees under the Patent Act, that award only involved fees for work performed before March 31, 2003. Frosty Bites' motion requested additional fees to cover work performed after March 31, 2003. The motion was granted in the amount of $1,372,223.04. The motion was granted because it had already been established "that this is an exceptional case, that there is clear and convincing evidence of inequitable conduct, and that attorney fees are appropriate." *Id.*

Once again, the Plaintiffs appealed. On May 2, 2008, the Plaintiffs filed an emergency motion with the United States Court of Appeals for the Federal Circuit to stay the original Patent Act fee award to Frosty Bites. The motion was denied because the motion was "devoid of any assertion of harm." *Dippin' Dots v. Mosey,* No. 2008–1125, –1337, slip op. at 4 (Fed.Cir. July 2, 2008). On June 16, 2008, the Plaintiffs submitted a lengthy brief appealing almost all of this Court's post-remand decisions. On November 4, 2008, the Court of

Appeals held oral arguments in front of a panel sitting in Stanford, California. On November 6, 2008, in a one-word order, the Court of Appeals affirmed this Court's post-remand decisions. *Dippin' Dots v. Mosey,* No. 2008–1125, –1337, 298 Fed. Appx. 964 (Fed.Cir. Nov. 6, 2008). The Plaintiffs then filed petitions for rehearing and rehearing en banc. The petitions were denied. The Plaintiffs then filed an emergency motion to stay the mandate, arguing that they would file a petition for certiorari to the United States Supreme Court. The motion was denied. On December 23, 2008, the Court of Appeals issued its mandate. On January 6, 2009, this Court docketed the mandate from the Court of Appeals.

Frosty Bites now moves for additional attorney fees under the Patent Act. Frosty Bites requests $261,782.50 in fees for the work required to defend against the second appeal by the Plaintiffs and the filing of its current motion for attorney fees. In response, the Plaintiffs say that Frosty Bites' motion for attorney fees is not timely, and that Frosty Bites is not entitled to attorney fees because the second appeal was not itself exceptional under the Patent Act. The Plaintiffs also say that, if the Court decides to award Frosty Bites additional attorney fees, then the Court should reduce the amount because of excessive and unnecessary work.

## II. *Discussion*

### A. *Timeliness of Frosty Bites' Motion*

■ Rule 54 of the Federal Rules of Civil Procedure provides that a motion for attorney fees must "be filed no later than 14 days after the entry of judgment." Fed.R.Civ.P. 54(d)(2)(B)(i). The Plaintiffs say that the entry of judgment occurred on December 23, 2008, when the Court of Appeals issued its mandate. Frosty Bites filed its motion on January 15, 2009, which is more than 14 days after the Court of

Appeals issued its mandate. The Plaintiffs, therefore, say that Frosty Bites' motion should be denied as untimely.

Frosty Bites' motion for attorney fees, however, is not subject to Rule 54. The trigger for the 14–day period under Rule 54 is the entry of judgment. A "judgment" is defined by Rule 54 as "any order from which an appeal lies." Fed.R.Civ.P. 54(a). Based on that definition alone, Rule 54 could apply to a judgment from the Court of Appeals. After all, a judgment from the Court of Appeals can be appealed to the United States Supreme Court. But looking at the Federal Rules as a whole demonstrates that Rule 54 should not apply to a judgment from the Court of Appeals. Starting at the beginning, Rule 1 provides that "[t]hese rules govern the procedure in all civil actions and proceedings in the United States district courts." Fed.R.Civ.P. 1. This rule creates a presumption that the Federal Rules only deal with and refer to district court proceedings. Additionally, Rule 54 is part of Chapter VII of the Federal Rules. This chapter is titled "Judgment" and provides rules for issues such as motions for summary judgment, a new trial, and to alter or amend a judgment. These are all issues that only arise in district court proceedings. For example, Rule 59 provides that "[a] motion to alter or amend a judgment must be filed no later than 10 days after the entry of judgment." Fed.R.Civ.P. 59(e). This rule "makes clear that the district court possesses the power ... to alter or amend a judgment after its entry." Fed.R.Civ.P. 59, Advisory Committee Notes, 1948 Amendments. If the word "judgment" in Rule 59 includes a judgment from the Court of Appeals, then the same should be true for Rule 54. But it is obvious that a district court does not possess the power to alter or amend a judgment of the Court of Appeals.

The reasons for having a 14–day period also demonstrate that Rule 54 should not apply to a judgment from the Court of Appeals. The most important reason is that the "14–day period is designed to operate in conjunction with the 30–day appeal period." 10 James Wm. Moore's Federal Practice § 54.151 (Matthew Bender 3d ed.). "14 days ensures that the fee opponent has notice of the fee motion prior to the expiration of the time to appeal." Id.; see Fed.R.Civ.P. 54, Advisory Committee Notes, 1993 Amendments. But this rationale only applies to a judgment from a district court. A party that wants to appeal a judgment from the Court of Appeals has much longer than 30 days to file a petition for a writ of certiorari to the Supreme Court. Compare Fed. R.App. P. 4(a)(1)(A) (30 days to file notice of appeal) with Sup.Ct. R. 13 (90 days to file petition for a writ of certiorari). Another reason for the 14–day period is that "[p]rompt filing affords an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind." Fed.R.Civ.P. 54, Advisory Committee Notes, 1993 Amendments. Again, this rationale only applies to a judgment from a district court. There are no trials in the Court of Appeals, and a district court judge will not have "the services performed [on appeal] freshly in mind."

Although there is not much relevant case law on this issue, at least one court has also said that Rule 54 does not apply to a judgment from the Court of Appeals. See Turic v. Holland Hospitality, No. 94–1424/94–1467, 1996 U.S.App. LEXIS 25291, at *3 (6th Cir. Sept. 17, 1996) (unpublished). In Turic, the court characterized Rule 54 as only applying to a motion "for [attorney] fees accrued at the trial level." Id. The court then said that "there appears to be no guidance that addresses the time frame within which to file a mo-

tion for fees accrued for appellate services." *Id.*

■ It is, of course, not enough to say that Frosty Bites' motion for attorney fees is not subject to Rule 54. The question of how long Frosty Bites had to file its motion for attorney fees still remains. "In the absence of a statutory or rule-based deadline ... a general rule of diligence should govern." *JCW Investments, Inc. v. Novelty, Inc.*, 509 F.3d 339, 342 (7th Cir. 2007). Frosty Bites filed its motion for attorney fees on January 15, 2009, which is 23 days after the Court of Appeals issued its mandate and 9 days after docketing of the mandate in this Court. In general, anything within 30 days shows reasonable diligence. This is especially true in this case, where the procedural posture is complicated and application of the Federal Rules is unclear. Frosty Bites' motion for attorney fees, therefore, is timely.[2]

B. *Attorney Fees under the Patent Act*

■ The Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Among the types of conduct that can make a case exceptional are "willful infringement, inequitable conduct before the [PTO], misconduct during litigation, vexatious or unjustified litigation, and frivolous suit. Such conduct must be supported by clear and convincing evidence." *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed.Cir.1989).

■ Frosty Bites requests attorney fees for the work required to defend against the second appeal by the Plaintiffs and pursuing this motion for attorney fees. Frosty Bites is entitled to these fees because, as this Court has already held twice, this is an exceptional case, there is clear and convincing evidence of inequitable conduct, and attorney fees are appropriate. *Dippin' Dots v. Mosey*, No. 3:96–CV–1959, 2005 WL 1866839 at *4 (N.D.Tex. Aug. 4, 2005). It does not matter that Frosty Bites requests fees for time spent on appeal because an award under the Patent Act "is not limited to fees paid for counsel's work at trial." *Mathis v. Spears*, 857 F.2d 749, 756 (Fed.Cir.1988). It also does not matter that Frosty Bites requests fees for time spent litigating fee issues because "courts have consistently held that [a party] may be awarded ... compensation ... for time spent on the fee application and successful fee appeals." *Prandini v. National Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978). Indeed, "courts have repeatedly recognized that the unavailability of 'fees for fees' could render fee-shifting provisions impotent, thereby reducing the effectiveness of the underlying statutes." *AFGE, Local 3882 v. Federal Labor Relations Auth.*, 994 F.2d 20, 22 (D.C.Cir.1993).

The Plaintiffs concede that attorney fees for a fee appeal are available under the Patent Act. But they argue that Frosty Bites must make a separate showing that the appeal itself is exceptional. In other words, the Plaintiffs say that attorney fees have to be separately justified for each

---

**2.** Even if Frosty Bites' motion for attorney fees is subject to Rule 54, it is not clear that the motion is untimely. The Plaintiffs say that the entry of judgment occurred on December 23, 2008, when the Court of Appeals issued its mandate. But there is a reasonable argument that the entry of judgment occurred on January 6, 2009, when this Court docketed the mandate from the Court of Appeals. *Cf.* *Sudouest Import Sales Corp. v. Union Carbide Corp.*, 102 F.R.D. 264 (D.P.R.1984) ("The entry of judgment ... is the moment in which the District Court received the mandate."). If this argument is correct, then Frosty Bites filed its motion 9 days after the entry of judgment and, therefore, the motion is timely under Rule 54.

phase of a case. The Supreme Court, however, rejected this same argument when it was made about the Equal Access to Justice Act (EAJA). *See Commissioner, INS v. Jean,* 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). The EAJA provides that:

> a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort) . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). In *Jean,* the government made the argument that unless the government's position in the fee litigation itself was not substantially justified, fees for any litigation about fees are not recoverable under the EAJA. But, as the Supreme Court explained, the EAJA "refers to an award of fees 'in any civil action' without reference to separate parts of the litigation, such as discovery requests, fees or appeals." *Id.* The Supreme Court also recognized that requiring courts to make a separate finding under the EAJA that each phase of a case was not substantially justified could "spawn a 'Kafkaesque judicial nightmare' of infinite litigation." *Id.* at 163, 110 S.Ct. 2316. The Supreme Court, therefore, held that "only one threshold determination for the entire civil action" is necessary to establish eligibility for attorney fees. *Id.* at 159, 110 S.Ct. 2316.

*Jean* demonstrates that Frosty Bites does not need to make a separate showing that the appeal itself is exceptional. The reasoning in *Jean* applies to this case because, for purposes of this issue, there is no material difference between the Patent Act and the EAJA. Just as the EAJA refers to "any civil action," the Patent Act refers to "exceptional cases," without reference to separate parts of the litigation, such as discovery requests, fees, or appeals. And, just as it would for the EAJA, requiring courts to make a separate finding under the Patent Act that each phase of a case is "exceptional" could spawn a Kafkaesque judicial nightmare of infinite litigation. Therefore, only one threshold determination that this case is exceptional is necessary to establish Frosty Bites' eligibility for attorney fees.

The Plaintiffs do not address *Jean,* but instead cite to *Rohm & Haas Co. v. Crystal Chemical Co.,* 736 F.2d 688 (Fed.Cir. 1984). *Rohm & Haas* involved the appeal of a judgment of patent infringement. The court reversed the judgment because the plaintiff "had not cured its earlier fraud in the prosecution of the application for the patent asserted on appeal." *Id.* at 693. The defendants then filed a motion for attorney fees for the appeal. *Id.* at 689. After summarizing the law on attorney fees under the Patent Act, the court said "[w]e construe the language of [section] 285 as applicable to cases in which the appeal itself is exceptional". *Id.* at 692. The court did not award attorney fees for the appeal because "the previous holding on the merits . . . [broke] new ground on the subject of fraud in the PTO and [set] new standards in this area of the law." *Id.* at 693.

■ *Rohm & Haas,* however, does not establish that Frosty Bites must make a separate showing that the appeal itself is exceptional. As initial matter, *Rohm & Haas* is distinguishable from this case. Unlike *Rohm & Haas,* the second appeal in this case did not set any new standards for inequitable conduct. The Court of Appeals simply affirmed this Court's decision in a one-word, non-precedential order. It

is true that the court in *Rohm & Haas* said that section 285 was "applicable to cases in which the appeal itself is exceptionable." 736 F.2d at 692; *see also Stryker Corp. v. Intermedics Orthopedics, Inc.*, 962 F.Supp. 357, 359–60 (E.D.N.Y.1997). But this statement was not necessary to the court's decision and is not compelled by the court's reasoning. *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1315 (11th Cir.1998) (Carnes, J., concurring) ("[D]icta [from lower courts] is not binding on anyone for any purpose."). Because the appeal in *Rohm & Haas* set new standards for inequitable conduct, the case as a whole, not just the appeal, was not exceptional because of inequitable conduct. The court, therefore, did not and could not decide whether a prevailing party has to make a separate showing that the appeal itself is exceptional, when the district court has already held that the case is exceptional because of inequitable conduct. That question is squarely presented in this case, and so this Court is free to rely on other case law.[3] Frosty Bites, therefore, is entitled to attorney fees for the work required to defend against the second appeal by the Plaintiffs and to file its current motion for attorney fees.

## C. *The Amount of Attorney Fees*

 Frosty Bites requests attorney fees in the amount of $261,782.50. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonably hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d

40 (1983). The Plaintiffs only object to a portion of Frosty Bites' request for attorney fees. The Plaintiffs say that Frosty Bites spent an unreasonable amount of time preparing for oral argument in the second appeal and in preparing this motion for attorney fees. After reviewing the individual time entries submitted by Frosty Bites, the Court agrees that some of the hours should be excluded as "excessive, redundant, or otherwise unnecessary." *Id.* at 434, 103 S.Ct. 1933. Two attorneys—William Hubbard and Keith Broyles—did almost all of the work. William Hubbard's total hours should be reduced by 13%, and Keith Broyles' total hours should also be reduced by 13%. These reductions reflect excessive time spent preparing for oral argument in the second appeal and for preparing this motion for attorney fees. After these reductions, Frosty Bites is entitled to attorney fees in the amount of $229,642.60.

## III. *Conclusion*

For the reasons stated above, Frosty Bites Distribution, LLC's Motion for Appellate Fees [Doc. 1053] is GRANTED in the amount of $229,642.60.

---

**3.** Even if the statement in *Rohm & Haas* was necessary to the court's decision, it still is not clear that it would be binding. "[A] district court or a three-judge panel is free to reexamine the holding of a prior panel in light of an inconsistent decision by a court of last resort on a closely related, but not identical issue." *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir.2003). In this case, the reasoning of *Jean*—an inconsistent decision by a court of last resort on a closely related, but not identical issue—should take precedence over an isolated statement in *Rohm & Haas*.